[No. 43314. En Banc. June 12, 1975.]

THE CITY OF BELLEVUE, *Appellant,* v. ROGER W. MILLER, *Respondent.*

*Lee Kraft, City Attorney,* by *Leo E. Poort, Assistant,* for appellant.

*Francis & McFarlane,* by *D. Michael Tomkins,* for respondent.

*Robert C. Boruchowitz,* amicus curiae, on behalf of Seattle-King County Public Defender.

BRACHTENBACH, J.—The City of Bellevue appeals from a superior court's determination that a "wandering or prowling" ordinance is unconstitutionally vague. We affirm.

On October 4, 1973, defendant was placed under arrest for suspicion of burglary. Defendant was eventually released without being charged with burglary, apparently because police investigation revealed certain evidence suggesting that defendant was not the culprit.[1] Instead, after a curious delay of over 1 month defendant was notified by mail that he had been charged with violating Bellevue's vagrancy ordinance. Defendant was convicted in district court of the misdemeanor, "wandering or prowling," but he appealed to superior court where his motion to dismiss was granted on the ground that the ordinance is unconstitutionally vague.

■ ■ Bellevue first contends that the superior court erred in ruling on the constitutionality of the ordinance without hearing the facts of the case. In support of this contention the City relies upon the following language from *State v. Dixon,* 78 Wn.2d 796, 801, 479 P.2d 931 (1971):

Unless a criminal statute is so glaringly unconstitutional, so palpably in derogation of specifically enumer-

[1]The district court is not a court of record and the superior court dismissed the case, so the circumstances giving rise to defendant's initial arrest and eventual conviction are not in the record. However, Bellevue states in its brief (appellant's brief at 6) that fingerprints found at the scene of the burglary were not those of defendant.

ated and declared constitutional rights that reasonable men could not differ about it, its constitutionality should be tested in the light of some kind of behavior, actual or hypothetical.

That dictum is unfortunately broad. Where it is argued that the language of a legislative proscription is impermissibly vague, either because the enactment fails to give fair notice of what kind of conduct is unlawful or because law enforcement officials and triers of fact are without adequate standards to evaluate the lawfulness of particular conduct, the factual setting out of which the case arose can be wholly irrelevant. Where it is asserted that an entire statute or ordinance fails to specify adequately what activity is prohibited, courts will look to the face of the enactment to determine whether any conviction based upon the proscription could constitutionally be upheld. In such a case, courts are not concerned with the defendant's awareness of the law; the presumption that persons know the law is so familiar that no recitation of authority is required. Neither are courts concerned with the nature of the defendant's conduct. As stated in *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 83 L. Ed. 888, 59 S. Ct. 618 (1939):

> If on its face the challenged provision is repugnant to the due process clause, specification of details of the offense intended to be charged would not serve to validate it. [Citations omitted.] It is the statute, not the accusation under it, that prescribes the rule to govern conduct and warns against transgression.

Although the factual setting of a case is irrelevant where the entire statute is challenged as vague, a different problem exists where the statute is only partially vague. As explained in *Smith v. Goguen*, 415 U.S. 566, 577, 578, 39 L. Ed. 2d 605, 94 S. Ct. 1242 (1974), there are statutes which contain both precisely worded prohibitions and prohibitions of uncertain application, and such a statute, though potentially vague as to some conduct, may nevertheless be constitutionally applied to one whose act clearly falls within the statute's "hard core." If, for example, a statute prohib-

its certain acts but also includes a constitutionally infirm catch-all provision, a person ought not succeed in a challenge to the statute on the basis of vagueness *if* the statute clearly notified the person that the particular act charged was prohibited and there is no danger of an *ad hoc* determination of guilt resulting from inadequate statutory guidelines. Of course, where the statute is partially vague sufficient facts must be known in order to determine whether or not the person's conduct falls within a specific proscription. The Bellevue ordinance at issue in this case does not have specific and nonspecific parts; we need not be concerned with the question of whether defendant's conduct falls within a "hard core" of prohibited activity. *Smith v. Goguen, supra* at 578. We conclude, therefore, that examination of the factual setting of this case is unnecessary and would, in fact, be superfluous to a determination of whether or not the Bellevue ordinance is on its face unconstitutionally vague.

The legislation in issue, Bellevue ordinance No. 1085, § 1, codified as Bellevue City Code § 7.40.080, provides in part:

> Wandering or prowling. Any person who wanders or prowls in a place, at a time, or in a manner, and under circumstances, which manifest an unlawful purpose or which warrant alarm for the safety of persons or property in the vicinity is hereby declared to be a vagrant, and is guilty of a misdemeanor.

This part is followed by a section listing examples of behavior which may be considered as manifesting an unlawful purpose or warranting alarm,[2] and a third section requiring that the wanderer or prowler be afforded an opportunity to "dispel any alarm" by explaining his or her pres-

---

[2] "Among circumstances which may be considered as manifesting an unlawful purpose or warranting alarm for the safety of persons or property, for purposes of this section, is flight by a person upon the appearance of a police officer, the refusal of a person to identify himself to a police officer, or an attempt by a person to conceal himself or any object from a police officer." Bellevue City Code § 7.40.080.

ence and conduct.[3] The ordinance is patterned upon the Model Penal Code, Proposed Official Draft § 250.6 of The American Law Institute (1962).[4]

The requirement that criminal legislation be definite in language is premised upon two considerations, the first being that citizens must have notice of what conduct is proscribed. "To be consistent with due process, a penal statute or ordinance must contain ascertainable standards of guilt, so that men of reasonable understanding are not required to guess at the meaning of the enactment." *Seattle v. Drew*, 70 Wn.2d 405, 408, 423 P.2d 522, 25 A.L.R.3d 827 (1967). The basis of this constitutional principle is that "[a]ll are entitled to be informed as to what the State commands or forbids." *Lanzetta v. New Jersey, supra* at 453. The second consideration, obverse to the notice aspect of the void-for-vagueness doctrine, is that vague laws per-

[3]"No arrest shall be made under this section, nor shall any person be convicted of an offense under this section, unless the police officer affords an opportunity for a person suspected of violating this section to dispel any alarm which would otherwise be warranted by requesting such person to identify himself and explain his presence and conduct, unless flight by the suspected violator, or other circumstances, make it impractical for the police officer to afford such an opportunity. No person shall be convicted of an offense under this section if it appears at trial that the explanation given by the suspected violator was true and, if believed by the police officer at the time, would have dispelled the alarm." Bellevue City Code § 7.40.080.

[4]Bellevue notes this court's dictum in *Seattle v. Drew*, 70 Wn.2d 405, 412, 423 P.2d 522, 25 A.L.R.3d 827 (1967), where it was suggested that the Model Penal Code, Proposed Official Draft § 250.6 of The American Law Institute (1962), represents a constitutionally valid approach to legislation pertaining to loitering. The code, however, treats the offense as a "violation." A violation under the code "does not constitute a crime and conviction of a violation shall not give rise to any disability or legal disadvantage based on conviction of a criminal offense." Model Penal Code, Proposed Official Draft § 1.04(5) of The American Law Institute (1962). One who violates the Bellevue vagrancy ordinance is guilty of a misdemeanor and is subject to criminal fine or even imprisonment. This distinction may explain the willingness of The American Law Institute to propose legislation which does not meet the constitutional requirement of definiteness, although it would seem that vagueness problems inhere despite the relatively inconsequential penalty contemplated under the code.

mit arbitrary arrests and convictions. *Papachristou v. Jacksonville*, 405 U.S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972); Amsterdam, *Federal Constitutional Restrictions on the Punishment of Crimes of Status, Crimes of General Obnoxiousness, Crimes of Displeasing Police Officers, and the like*, 3 Crim. L. Bull. 205, 220-23 (1967). Imprecisely drawn criminal laws offend due process because they leave "judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case." *Giaccio v. Pennsylvania*, 382 U.S. 399, 402-03, 15 L. Ed. 2d 447, 86 S. Ct. 518 (1966). It is in view of these considerations that we determine whether or not the Bellevue ordinance is a sufficiently clear and unequivocal statement of what activity is unlawful.

■■ The scope of the ordinance is exceedingly broad, extending generally to any "wandering or prowling" which manifests an unlawful purpose or which warrants alarm for the safety of persons or property. The terms "wandering" and "prowling" standing alone clearly fail to specify adequately what conduct is criminal.

> Whether any and all walking is included in "wandering" is a definitional mystery that subjects a pedestrian to the unbridled discretion of an officer whose standard for law enforcement is equally as nebulous.

*State v. Grahovac*, 52 Hawaii 527, 535, 480 P.2d 148 (1971). "Prowling" connotes movement which is less innocent than mere wandering but is nevertheless too elastic to satisfy the constitutional requirement of definiteness. *Portland v. White*, 9 Ore. App. 239, 242, 495 P.2d 778 (1972).

The supposed standard of criminality, however, is not mere movement but movement which manifests an unlawful purpose or creates alarm. A determination of whether particular activity manifests an unlawful purpose or creates alarm is entirely dependent upon a police officer's opinion, not only with respect to what conduct the ordinance prohibits, but also with respect to the suspected import of the activity observed. Such extravagant police

discretion is plainly improper. As this court observed in *Seattle v. Drew*, 70 Wn.2d 405, 411, 423 P.2d 522 (1967):

> An ordinance that allows a person to stand on a public sidewalk only at the whim of a police officer is unconstitutional. *Shuttlesworth v. Birmingham*, 382 U.S. 87, 15 L. Ed. 2d 176, 86 Sup. Ct. 211 (1965).

Legislation which purports to define illegality by resort to such inherently subjective terms as "unlawful purpose" or "alarm" permits, indeed requires, an *ad hoc* police determination of criminality. Such legislation is vague because there can be no prior notice of what conduct an individual officer will find sufficiently suspicious to warrant arrest. The potential for arbitrary and discriminatory law enforcement under such legislation cannot constitutionally be tolerated. *Papachristou v. Jacksonville, supra* at 170; Amsterdam, *supra* at 223.

It is argued, however, that requisite specificity is supplied by the second part of the ordinance which lists three examples of behavior which "may be considered as manifesting an unlawful purpose or warranting alarm for the safety of persons or property": (1) flight by a person upon the appearance of a police officer; (2) refusal by a person to identify himself or herself to a police officer; (3) an attempt by a person to conceal himself or herself or any object from a police officer. This section cannot save the ordinance because there are plainly no actual limitations placed on the exercise of police discretion. The section is not intended to be exclusive but merely illustrative. Therefore, the reach of the criminal sanction remains essentially unbounded and indeterminate.

Even were the ordinance limited in application to situations where a person acts in one of the three specified ways, substantial constitutional objections could nonetheless be raised. The illustrative section provides that certain acts, not criminal in themselves, may indicate that an individual is involved in unlawful activity. In other words the *crime* is not the objective fact of flight from a police officer, refusal to identify oneself or an attempt to conceal some-

thing, but rather consists merely of being observed in circumstances which a police officer deems questionable. *Ricks v. District of Columbia*, 414 F.2d 1097, 1108 (D.C. Cir. 1968). Such a basis for arrest, predicated upon nothing more than an officer's suspicion that a person has been involved in unlawful activity or prediction that the person will become involved in unlawful activity, contravenes the traditional reluctance in our jurisprudence to punish individuals for anticipated but as yet uncommitted, or suspected but unknown crimes. *Ricks v. District of Columbia, supra* at 1108; Note, 4 Harv. Civ. Rights-Civ. Lib. L. Rev. 275, 282-83 (1968); *see Williamson v. United States,* 184 F.2d 280, 282 (2d Cir. 1950). Arrest must be grounded upon a more substantial basis than police hunch. *Papachristou v. Jacksonville, supra.*

■ Furthermore, if it is not the purpose then it is surely an important effect of legislation such as the Bellevue ordinance that the constitutional safeguard of requiring probable cause to arrest is circumvented. To sustain this ordinance

> would be to allow a crime to be defined so as to render the requirement of probable cause to effect a valid arrest an illusory protection. . . . To say that an officer may arrest if he has probable cause to believe that the suspect's conduct is suspicious is to speak in anomalies.

(Footnote omitted.) *Portland v. James*, 251 Ore. 8, 14, 444 P.2d 554 (1968). In terms of the void-for-vagueness doctrine the fact that such undefined discretion rests with the police officer necessarily precludes notice of what conduct is unlawful and fails to provide standards by which the lawfulness of particular conduct can be judged. Clearly, legislative vagueness cannot be cured by enumerating examples of behavior which can be interpreted as indicating violation of a standardless proscription.

■ The third section of the ordinance requires the alarmed police officer to permit the wanderer or prowler to explain his or her conduct. This opportunity for explana-

tion, unrelated to the constitutional requirements of notice and enforcement guidelines, cannot cure the defect of legislative imprecision. Indeed, since it is the arresting officer who weighs the credibility of the explanation, this section makes even more obvious the fact that arrest and prosecution under the ordinance proceed essentially upon the officer's unqualified and undefined discretion. The vagueness of the proscription is, if anything, exacerbated by the fact that there are and can be no standards by which the sufficiency of the proffered explanation is evaluated. *Cf., Ricks v. District of Columbia, supra* at 1104-05.

Finally, it is argued that judicial construction of the Bellevue ordinance can cure any constitutional infirmities caused by imprecision in its language. We recognize the obligation to construe the ordinance if possible in such a manner as to uphold its constitutionality. *State v. Dixon*, 78 Wn.2d 796, 804, 479 P.2d 931 (1971). However, we are unable to place a sufficiently limited construction upon the standardless sweep of this legislation. This court has upheld broadly worded criminal laws where the focus was reasonably definite. Thus, where a prohibition is directed to identifiable, articulable conduct such as acts relating to prostitution, *Seattle v. Jones*, 79 Wn.2d 626, 488 P.2d 750 (1971), or participation in an unlawful assembly, *State v. Dixon, supra*, the statute or ordinance will be sustained against a void-for-vagueness challenge. The Bellevue ordinance has no identifiable focus but is aimed indeterminately toward "unlawful" activity.

We conclude, therefore, that Bellevue ordinance No. 1085, § 1, is on its face invalid. In requiring one to speculate as to what conduct is proscribed and in providing that criminal prosecution can proceed upon the highly arbitrary and inherently subjective opinion of the arresting officer, the ordinance is unconstitutionally vague.

STAFFORD, C.J., and FINLEY, ROSELLINI, HAMILTON, WRIGHT, UTTER, and HOROWITZ, JJ., concur.

HUNTER, J. (concurring)—I concur. The facts of this case are disclosed in the appellant's brief and are not disputed by the defendant.

On Wednesday evening, October 3, 1973, the Bellevue Police Department received a report of a burglary at the Quorum Apartments. Officer Lorack, being in the immediate vicinity, was dispatched to the scene of the crime. Upon arriving, the officer observed the defendant in a Volkswagen traveling in the opposite direction without any headlights on. Seeing the police car, the defendant pulled into a dead-end drive leading to the Bellevue Community College. Being suspicious, the officer followed the defendant, pulled the car over, and inquired as to why the defendant's headlights were not on. The defendant explained that he was having difficulty with his electrical system, had already made a makeshift repair, and had forgotten to turn the lights back on. The officer actuated the light switch and found the headlights to be functioning properly. The officer then inquired as to the defendant's presence in the driveway to the college, to which the defendant responded that he was returning home from an insurance client's home in Issaquah and that he was lost. Since the defendant resembled the description of the burglary suspect, and because the officer was not satisfied with the defendant's answers, he advised the defendant of his rights to remain silent.

Officer Lorack again requested the defendant to explain his presence in the area. This time, according to the appellant, the defendant stated that he had been at Totem Lake in Kirkland on business, and was en route home to Seattle. While this discussion was going on, the officer received word that a witness to the burglary was en route to his location to determine if the defendant was the same individual who committed the burglary. Upon arriving, the witness positively identified the defendant as the person he had observed, in addition to identifying the defendant's sweater and vehicle. The defendant was arrested for investigation of burglary.

On November 12, 1973, the police laboratory determined that latent fingerprints found on the door to the apartment which had been burglarized, were not those of the defendant. On the next day the prosecutor's office dismissed the burglary charges.

On November 14, 1973, a misdemeanor warrant was issued, charging the defendant with violating the Bellevue "wandering and prowling" ordinance.

The purpose of the "wandering and prowling" ordinance is to protect persons and property from criminal activity by preventing crime at its inception. This was accomplished under the facts of the instant case under the investigative authority of the police officer without any utilization of the Bellevue "wandering and prowling" ordinance. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889, 88 S. Ct. 1868 (1967); *State v. Gluck*, 83 Wn.2d 424, 518 P.2d 703 (1974); *State v. Davis*, 12 Wn. App. 32, 527 P.2d 1131 (1974). In the case at bar, the defendant's apprehension and subsequent arrest were premised on a finding by the officer that probable cause existed to reasonably believe that a burglary had been committed by the defendant. The defendant's release resulted from a determination that there was insufficient evidence to bring him to trial for the commission of this crime. The ensuing arrest of the defendant under the "wandering and prowling" ordinance amounted to nothing more than harassment, since it is inconceivable that the ordinance was being employed to protect the public from the commission of a crime by this defendant.

It is argued that by striking down this ordinance the investigative authority of the police will be curtailed and that the police will have to wait for an overt act to occur which is itself a crime, or demonstrates an intent to commit a crime before it can intercede. This contention is wholly without merit. Its fallacy is demonstrated by the facts of this case, since this officer was able to stop the defendant, question him, and lawfully place him under arrest without any reliance on the "wandering and prowling" ordinance.

In conclusion, this ordinance is totally unnecessary for the accomplishment of its intended purpose: the prevention of crime at its inception. The police are in no way limited in the protection of the public from criminal activity by our striking down this ordinance.