[No. 32136-6-I.   Division One.   July 25, 1994.]

THE STATE OF WASHINGTON, *Respondent,* v. RANDOLPH J. SPENCER, *Petitioner.*

*Adam Shapiro* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Roger S. Rogoff* and *Janet L. Capps, Deputies,* for respondent.

*Richard B. Sanders,* amicus curiae.

COLEMAN, J. — Randolph J. Spencer was granted discretionary review of his conviction for one count of brandishing a weapon. He argues that (1) RCW 9.41.270 violates his right to bear arms under the Washington State Constitution, (2) the statute is unconstitutionally vague, and (3) the statute is unconstitutionally overbroad. We affirm.

On August 19, 1991, at approximately 10 p.m., Spencer was taking a walk with his dog. He carried his AK-47 semiautomatic rifle, with the clip attached, on his shoulder as he walked.[1] A passing motorist, Verrill Olsen, saw Spencer and noticed that he was "walking briskly and carrying a rifle". Olsen became concerned when he saw that the rifle had a clip attached to it. He approached some firefighters who were investigating a propane leak nearby and suggested that they call the police. Olsen then saw police officer Heather Wall and told her that a man was walking down the street with a "military rifle slung on his shoulder".

Several firefighters also observed Spencer walking with his rifle and became concerned. Eric Tomlinson saw Spencer walking "rather fast with his head down". Tomlinson saw the rifle and noticed that it had a clip in it. He became alarmed "[b]ecause there was no obvious reason to have a weapon like that, given the surroundings". He also thought

---

[1]Spencer was walking in a residential area near South 260th Street and Pacific Highway South, in King County.

that the manner in which Spencer carried the rifle was threatening.

Officer Wall approached Spencer in her vehicle and noticed that he was carrying a rifle in "a hostile, assaultive type manner with the weapon ready". She also noticed that the rifle had a clip attached to it. Wall stopped her vehicle at a distance from Spencer and ordered him to put the gun down and walk toward her with his hands in the air. She then took him into custody, searched him, and found a .45-caliber automatic pistol under his jacket, as well as a valid concealed weapons permit.

Spencer was arrested and charged with unlawfully displaying a weapon, as prohibited by RCW 9.41.270. The District Court found him guilty, and the Superior Court affirmed the conviction. This court granted Spencer's motion for discretionary review.

We initially consider whether RCW 9.41.270 unconstitutionally restricts the right to bear arms under the Washington State Constitution.

■■ Former RCW 9.41.270(1) provides, in part:

> It shall be unlawful for anyone to carry, exhibit, display or draw any firearm . . . in a manner, under circumstances, and at a time and place that either manifests an intent to intimidate another or that warrants alarm for the safety of other persons.

A statute is presumed constitutional, and the party challenging it has the burden of proving that it is unconstitutional beyond a reasonable doubt. *State v. Maciolek*, 101 Wn.2d 259, 263, 676 P.2d 996 (1984) (citing *State v. Dixon*, 78 Wn.2d 796, 479 P.2d 931 (1971); *State v. Rhodes*, 92 Wn.2d 755, 600 P.2d 1264 (1979)). If possible, a court will construe a statute so as to render it constitutional. *State v. Luther*, 65 Wn. App. 424, 427, 830 P.2d 674 (1992) (citing *State v. Reyes*, 104 Wn.2d 35, 41, 700 P.2d 1155 (1985)).

■ Article 1, section 24 of the Washington Constitution provides:

> The right of the individual citizen to bear arms in defense of himself, or the state, shall not be impaired, but nothing in this section shall be construed as authorizing individuals or corpo-

rations to organize, maintain or employ an armed body of men.[2]

Although this provision is stated in absolute terms, the right to bear arms is subject to reasonable regulation by the State under its police power. *State v. Rupe*, 101 Wn.2d 664, 707 n.9, 683 P.2d 571 (1984). However, the regulation must be reasonably necessary to protect the public safety, health, morals, and general welfare and must be substantially related to the legitimate ends sought. *Second Amendment Found. v. Renton*, 35 Wn. App. 583, 586, 668 P.2d 596 (1983) (citing *Homes Unlimited, Inc. v. Seattle*, 90 Wn.2d 154, 158, 579 P.2d 1331 (1978)).

In *Second Amendment Found.*, the appellants challenged a provision in the Renton Municipal Code which prohibited the carrying of firearms in places where alcoholic beverages are dispensed by the drink. The court upheld the ordinance, concluding that it was narrowly drawn because it prevented the carrying of firearms only in bars.[3] In addition, the court reasoned, the statute promoted public safety by reducing the possibility of armed conflict between people under the influence of alcohol. Thus, the court upheld the ordinance, concluding that the public's interest in safety outweighed the individual's right to bear arms in public places where liquor is served. *Second Amendment Found.*, at 586-87.

Spencer attempts to distinguish *Second Amendment Found.* by arguing that the statute in this case constitutes an effective ban on the right to bear arms in self-defense from past or future aggression. He also argues that the stat-

---

[2]Spencer correctly argues that an analysis under the criteria stated in *State v. Gunwall*, 106 Wn.2d 54, 720 P.2d 808, 76 A.L.R.4th 517 (1986) demonstrates that the Washington Constitution grants a broader right to bear arms than the United States Constitution, which provides: "A well regulated militia being necessary to the security of a free state, the right of the people to keep and bear arms, shall not be infringed." U.S. Const. amend. 2; *see State v. Rupe*, 101 Wn.2d 664, 706, 683 P.2d 571 (1984) (state provision is facially broader than federal provision). Therefore, this case will be analyzed under the Washington Constitution.

[3]The ordinance contained an exception for restaurants that served alcoholic beverages.

ute here is overly broad because it is unclear which weapons will cause alarm. Thus, he argues, people will decide not to carry any weapon for fear of prosecution, and the statute will have an undue chilling effect on the constitutional right to bear arms. Furthermore, he argues, the statute does not promote public safety because "preventing alarm" is an overly ambiguous objective.

■■ We do not find these arguments persuasive. First, the statute does not prevent a person from carrying weapons in self-defense. Weapons may be carried in response to "presently threatened unlawful force by another". RCW 9.41.270(3)(c). If there is no present threat, weapons must be carried in a manner that does not warrant alarm in others. The statute does not prohibit the ownership of weapons, and it limits the possession of certain weapons only when they are carried or displayed in a manner and under circumstances that warrant alarm. Thus, for example, the statute does not prohibit an individual from legally carrying a concealed weapon such as the .45-caliber pistol Spencer carried under his jacket. We conclude that the statute's restriction on an individual's right to bear arms in self-defense is minimal. The statute is narrowly drawn and demonstrates the Legislature's awareness of and concern with preserving the rights of the individual.

In addition, the statute does not have an undue chilling effect on the right to bear arms. As the Superior Court found, the statute only prohibits the carrying or displaying of weapons when objective circumstances would warrant alarm in a reasonable person.[4] Thus, the restriction applies only in a limited number of situations. Furthermore, the prohibition is not so vague that it would prevent persons of common intelligence from ever carrying a weapon on the street. In the vast majority of situations, a person of common intelligence would be able to ascertain when the carry-

---

[4]These circumstances may include, as in the present case, the fact that the weapon is being carried in a residential neighborhood, the time of day, the urban environment, the manner in which the weapon is carried, the size and type of weapon, and the fact that the weapon has a clip visibly attached.

ing of a particular weapon would reasonably warrant alarm in others. Although some areas of uncertainty may exist, these potential "gray areas" of the statute are small and do not render it unconstitutional. *Cf. Maciolek*, at 265 (possible areas of disagreement do not render statute unconstitutionally vague).[5]

Finally, contrary to Spencer's argument, the statute does promote public welfare and safety. People have a strong interest in being able to use public areas without fearing for their lives. The statute protects this interest by requiring people who carry weapons to do so in a manner that will not warrant alarm. Therefore, we conclude that the statute is reasonably necessary and substantially promotes the public welfare.

To summarize, we have determined that the statute minimally restricts the rights of the individual, it is narrowly drawn, and it promotes a substantial public interest. This public interest in security, and in having a sense of security, outweighs the individual's interest in carrying weapons under circumstances that warrant alarm in others. For these reasons, we hold that the restriction in RCW 9.41.270 on the right to bear arms is not unconstitutional.

We next determine whether RCW 9.41.270 is unconstitutionally vague as applied to Spencer's conduct.

■ The text of former RCW 9.41. 270 is set forth, in part, *supra*. A statute is unconstitutionally vague and violates due process if it (1) fails to provide adequate notice to citizens of which conduct is prohibited or (2) fails to contain ascertainable standards to prevent arbitrary enforcement. *State v. Maciolek*, 101 Wn.2d 259, 264, 676 P.2d 996 (1984) (quoting *State v. Foster*, 91 Wn.2d 466, 474, 589 P.2d 789 (1979)). A statute that is not vague on its face may nonetheless be vague as applied to conduct that falls outside the statute's "constitutional core". *Maciolek*, at 266 (citing *Bellevue v. Miller*, 85 Wn.2d 539, 541, 536 P.2d 603 (1975)).

---

[5]In this regard, we note that the present case, in which the Defendant was carrying a visibly loaded AK-47 rifle in an assaultive manner at night in a residential area, does not fall anywhere near a potential "gray area" in the statute.

In *Maciolek*, three petitioners challenged RCW 9.41.270, arguing that it was unconstitutionally vague. In one case, when the petitioner's doctor refused to give him a prescription for Percodan, the petitioner became angry and pulled back his jacket, revealing a handgun. The doctor was frightened and immediately wrote the prescription. In another case, the petitioner, a juvenile, fired his BB gun at two children and took one of their bicycles. In the third case, the petitioner, a juvenile, got into an argument with a woman and chased her with a knife. *Maciolek*, at 261-62. The petitioners argued that the statute was unconstitutionally vague because it contained an unclear definition of weapons and an unclear description of the conduct prohibited. *Maciolek*, at 264.

The Supreme Court rejected these arguments and held that the statute was not unconstitutionally vague. *Maciolek*, at 269. The court reasoned that the average person would know that the statute prohibited using a weapon to threaten another. *Maciolek*, at 265. In addition, the court concluded that the statute was directed at identifiable criminal conduct, had a reasonably definite focus, and did not encourage arbitrary enforcement. *Maciolek*, at 268-69. Furthermore, the court held, the statute was not vague as applied because the petitioners' conduct fell within the statute's constitutional core. *Maciolek*, at 266.

Spencer argues that this case is distinguishable from *Maciolek* because, unlike the petitioners in that case, he did not intend to threaten anyone and was convicted under a different portion of the statute. Spencer is correct that the *Maciolek* holding does not apply to this case. However, the court in *Maciolek* did address the "warrants alarm" portion of the statute in a footnote and essentially rejected Spencer's claim. *See Maciolek*, at 268 n.3.

In the footnote, the *Maciolek* court stated that because the term "warrants alarm" was qualified by specific weapons, it was sufficiently definite to prevent ad hoc determinations of criminality. The court contrasted the present statute with the ordinance in *Bellevue v. Miller, supra*, which prohibited

wandering or prowling that warrants alarm for the safety of persons or property. The court reasoned that the "warrants alarm" portion of the *Miller* statute was qualified only by the words "wandering or prowling", both of which are inherently vague. Thus, the court concluded, because the specification of weapons in the present statute gives it a narrow scope, it is distinguishable from the statute in *Miller* and is not unconstitutionally vague.[6]

█ Spencer urges this court not to follow the reasoning in *Maciolek* because it is only dicta. He also urges this court to reject the Superior Court's view that RCW 9.41.270 sets a "reasonable person" standard for determining whether the statute has been violated. However, the general rule is that if a term or phrase in a statute can be made definite by a reasonable construction, the court must narrowly construe it and uphold the statute. *Maciolek*, at 268 n.3 (citing *State v. Martinez*, 85 Wn.2d 671, 538 P.2d 521 (1975), *overruled on other grounds by State v. Smith*, 93 Wn.2d 329, 610 P.2d 869, *cert. denied*, 449 U.S. 873 (1980)).

█ We agree with the Supreme Court that the weapons limitation gives the statute a sufficiently narrow scope. In addition, we adopt the Superior Court's conclusion that a reasonable person standard is incorporated into the phrase "warrants alarm". When viewed with these two limitations in mind, it is clear that the statute is sufficiently definite to (1) provide defendants with adequate notice of prohibited conduct and (2) provide adequate enforcement standards. This construction is reasonable and in accord with the plain language of the statute.[7]

---

[6]Furthermore, the court reasoned, even if the phrase "warrants alarm" in the present statute could be considered vague, it can be interpreted narrowly for purposes of upholding the statute. The court then stated:

> If a weapon is displayed in a manner, under circumstances and at a time and place so that it poses a threat to another person, such a display would warrant alarm for the safety of another. Thus, narrowly construing the phrase to apply to only conduct that poses a threat to others gives the phrase a narrow and definite focus and saves it from vagueness.

*Maciolek*, at 268 n.3.

[7]As the State points out, the Legislature's use of the word "warrants" in the statute implies that there must be a sufficient objective basis for the alarm, *i.e.*, circumstances must be such that a reasonable person would be alarmed.

■ Having determined that the "warrants alarm" portion of the statute is not vague, the only remaining question is whether Spencer's conduct falls within the statute's constitutional core. Clearly, it does. Any reasonable person would feel alarmed upon seeing, on a residential street at night, a man carrying a visibly loaded AK-47 assault rifle in an assaultive manner. This alarm would be intensified if the man were walking briskly with his head down and avoiding eye contact with passers-by, as Spencer was doing. Furthermore, our conclusion that Spencer's conduct warranted alarm is supported by the kinds of people who were alarmed in this case, including several firefighters, a police officer, and a passing motorist.

We also conclude that a person of common intelligence would realize that carrying an assault rifle under such circumstances and in such a manner would warrant alarm in others. Whether different circumstances would warrant alarm is a question that must be left open; here, however, Spencer's conduct falls squarely within the core of the statute. Therefore, we reject Spencer's argument that the statute is unconstitutionally vague.

■ Finally, we decide whether RCW 9.41.270 is overbroad. In the free speech context, a statute is overbroad if its prohibitions reach constitutionally protected free speech activities. *Seattle v. Huff*, 111 Wn.2d 923, 925, 767 P.2d 572 (1989). If a statute regulates behavior, as opposed to pure speech, it will not be overturned unless the overbreadth is " 'both real and substantial in relation to the ordinance's plainly legitimate sweep.' " *Seattle v. Webster*, 115 Wn.2d 635, 641, 802 P.2d 1333, 7 A.L.R.5th 1100 (1990) (quoting *Seattle v. Eze*, 111 Wn.2d 22, 31, 759 P.2d 366, 78 A.L.R.4th 1115 (1988)), *cert. denied*, 500 U.S. 908 (1991).

■ Spencer argues that RCW 9.41.270 improperly narrows an individual's right to bear arms in self-defense. However, as discussed, *supra*, we have concluded that the statute's restriction on self-defense is minimal because (1) weapons may be carried in response to "presently threatened unlawful force by another" and (2) if there is no present

threat, weapons may be carried in a manner that does not warrant alarm in others. We have further determined that the statute is narrowly drawn to promote a substantial public interest and that the statute's language demonstrates the Legislature's concern with preserving the individual's right to bear arms in self-defense. For these reasons, we reject Spencer's claim that the statute is unconstitutionally overbroad.

The judgment and sentence are affirmed.

PEKELIS, A.C.J., and SCHOLFIELD, J., concur.

Review denied at 125 Wn.2d 1015 (1995).