[Nos. 35012-9-I; 36767-6-I. Division One. June 3, 1996.]

THE STATE OF WASHINGTON, *Respondent*, v. ORSON H. LEE, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. BRIAN YATES, *Appellant*.

*Eric Broman* and *Nielsen & Acosta*, for appellant Lee.

*Neil M. Fox* of *The Defender Association*, for appellant Yates.

*Norm Maleng, Prosecuting Attorney*, and *Peter E. Meyers, Deputy*, for respondent.

BECKER, J. — Orson Lee and Brian Yates appeal convictions under the stalking statute, RCW 9A.46.110. Appellants contend the statute is unconstitutionally overbroad and vague, and that it violates equal protection and due process. Each appellant also argues there was insufficient evidence to convict. We affirm both convictions.

## I.

On October 29, 1993, Brian Yates was convicted of stalking in violation of the former RCW 9A.46.110, which provided:

(1) A person commits the crime of stalking if, without law-

ful authority and under circumstances not amounting to a felony attempt of another crime:

(a) He or she intentionally and repeatedly follows another person to that person's home, school, place of employment, business, or any other location, or follows the person while the person is in transit between locations; and

(b) The person being followed is intimidated, harassed, or placed in fear that the stalker intends to injure the person or property of the person being followed or of another person. The feeling of fear, intimidation, or harassment must be one that a reasonable person in the same situation would experience under all the circumstances; and

(c) The stalker either:

(i) Intends to frighten, intimidate, or harass the person being followed; or

(ii) Knows or reasonably should know that the person being followed is afraid, intimidated, or harassed even if the stalker did not intend to place the person in fear or intimidate or harass the person.

. . .

(4) Attempts to contact or follow the person after being given actual notice that the person does not want to be contacted or followed constitutes prima facie evidence that the stalker intends to intimidate or harass the person.

On July 11, 1994, a juvenile division of King County Superior Court found Orson Lee guilty of stalking under the same statute. This court consolidated Lee's and Yates' appeals.

## II.

We first consider Brian Yates' challenge to the sufficiency of the evidence against him. Yates stipulated to a trial based on police reports detailing complaints by his former girlfriend, B. Egan. Yates and Egan separated in September 1992. Egan said she left Yates after he became physically abusive.

On January 5, 1993, Yates went to Egan's apartment to take back a VCR he had given her for Christmas. When Egan asked Yates to leave, he pushed her to the floor and took the VCR. This incident led to the filing of burglary and assault charges against Yates.

On January 6, Egan saw Yates near her apartment and again near her son's daycare. When Yates called her that afternoon, Egan asked him not to contact her. In a series of reports to police over the next several months, Egan complained that Yates was following her. On January 13, Egan reported that Yates followed her in his car as she traveled to various locations. On January 16, she reported Yates had followed her home from work. A report dated March 17 states that he followed her to the store and back to her apartment, and then to her lawyer's office. On March 23, Egan drove onto the freeway in an attempt to evade Yates, and eventually called police from a pay phone. On April 2, Yates followed Egan from her home to her son's daycare. Yates did not stop following Egan until she pulled into the parking lot of a police station. On April 11, police found Yates wandering near Egan's apartment. While staying with a friend on April 19, Egan saw Yates driving back and forth in front of the house.

Yates contends there was insufficient evidence to show he followed Egan "without lawful authority". In *State v. Smith*,[1] the Washington Supreme Court interpreted this phrase to mean authority found in "readily ascertainable sources" of statutory or common law.

In support of his contention that he had lawful authority to follow Egan, Yates mainly relies on cases concerning tort actions for invasion of privacy.[2] In *Mark v. Seattle Times*, the plaintiff alleged that news reporters tortiously intruded into his private affairs when they filmed him through the window at his place of business.

---

[1]*State v. Smith*, 111 Wn.2d 1, 11, 759 P.2d 372 (1988).

[2]*See Mark v. Seattle Times*, 96 Wn.2d 473, 635 P.2d 1081 (1981), *cert. denied*, 457 U.S. 1124 (1982); *Jeffers v. Seattle*, 23 Wn. App. 301, 597 P.2d 899 (1979).

The Court recognized that the tort of "intrusion" generally does not lie against one who simply follows or views another in a public place:

> On the public street, or in any other public place, the plaintiff has no legal right to be alone; and it is no invasion of his privacy to do no more than follow him about and watch him there.[3]

The Court affirmed an order of summary judgment in favor of the television station on the grounds that "the place from which the film was shot was open to the public and thus any passerby could have viewed the scene recorded by the camera."[4]

*Mark* and similar cases suggest, at most, that Yates did not commit the specific tort of invasion of privacy when he followed Egan in public places. These cases do not establish the broader proposition that Yates had "lawful authority" to act as he did. The trial court correctly concluded that Yates did not have "lawful authority" to follow Egan.

Yates also contends there was insufficient evidence to show that Egan was "intimidated, harassed, or placed in fear" by his conduct. The evidence showed that Yates persistently followed Egan over a three month period, despite her repeated requests to be left alone. Egan said Yates had abused her in the past, and that she was terrified by his ongoing conduct. This was sufficient to show that that Egan feared Yates, and that her apprehension of fear was reasonable. We conclude the evidence was sufficient to support Yates' conviction.

### III.

We next consider Lee's contention that there was insufficient evidence to convict him of stalking. Lee's disposi-

---

[3]*Mark*, 96 Wn.2d at 497 (quoting WILLIAM L. PROSSER, THE LAW OF TORTS 808 (4th ed. 1971)).

[4]*Mark*, 96 Wn.2d at 499.

tion was based on testimony concerning series of contacts between Lee and B. Gross. In October 1993, Lee began to appear at Gross' workplace, a restaurant in a large shopping mall. During the last two weeks of the month, Lee was there at least every other day. Typically, Lee would approach and attempt to talk to Gross. When Gross refused to talk to him, Lee would buy a soda, sit down in the adjacent food court, and stare at Gross. Lee would maintain this behavior for as long as 10 hours at a time. Lee also left a series of notes for Gross, saying that he wanted to talk to her, that he had "feelings" for her, and that he would keep her constantly in sight to make sure she did not get hurt. He wrote, "You know that I will not let anyone hurt you if I'm still your friend." At least once, Gross saw Lee on the bus as she traveled home in the evening.

Lee contends there was insufficient evidence to show he "followed" Gross within the meaning of the stalking statute. Lee asserts, relying on one dictionary definition,[5] that the word "follows" refers only to situations where the follower moves along behind someone. Lee did not walk behind Gross as she went in or out of the mall; he simply appeared there during her working hours.

At the time of Lee's conviction, the statute did not define the term "follows".[6] Where a term is not defined in a statute, this court looks to the plain, ordinary meaning

---

[5]"follow": "to go, proceed, or come after: move behind over the same path or course . . . " WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 883 (1966).

[6]The Legislature amended the statute in 1994, adding, among other things, this definition:

"Follows" means deliberately maintaining visual or physical proximity to a specific person over a period of time. A finding that the alleged stalker repeatedly and deliberately appears at the person's home, school, place of employment, business, or any other location to maintain visual or physical proximity to the person is sufficient to find that the alleged stalker follows the person. It is not necessary to establish that the alleged stalker follows the person while in transit from one location to another.

RCW 9A.46.110(6)(a).

of the word.[7] The meaning of "follow" is not limited to "trail" or "tail". The plain and ordinary meaning of the word includes movement correlated with the movement of the followee.[8]

■■ This court will not adopt "a forced, narrow, or overstrict construction which defeats the intent of the legislature."[9] The statute as a whole reflects a legislative purpose of proscribing persistent and threatening social contact. We conclude that a person "follows" another within the meaning of the statute if he deliberately and repeatedly correlates his movements or appearances with another person's in order to have contact with the person. The evidence was sufficient to show that Lee followed Gross to her place of work.

Lee also contends there was insufficient evidence to show that Gross' fear of him was reasonable.[10] The determination of whether Gross' fear was reasonable was one for the finder of fact in light of "all the circumstances", including Lee's staring behavior, his repeated references in the notes to Gross' need for protection, and testimony that Lee's mother had warned Gross to avoid Lee and not to trust him. On this record the trial court's conclusion that Gross' fear was reasonable will not be disturbed.

## IV.

■ Appellants contend the stalking statute is unconstitutionally overbroad. Overbreadth doctrine creates a limited exception to the usual rule that a party "will not be heard to challenge [a] statute on the ground that it may conceivably be applied unconstitutionally to others,

---

[7]*American Legion Post 32 v. Walla Walla*, 116 Wn.2d 1, 802 P.2d 784 (1991); *State v. Fjermestad*, 114 Wn.2d 828, 835, 791 P.2d 897 (1990).

[8]*See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 883 (1966) ("to move or change in constant relation to: correlate with").

[9]*State v. Cann*, 92 Wn.2d 193, 197–98, 595 P.2d 912 (1979).

[10]RCW 9A.46.110(1)(b) ("The feeling of fear, intimidation, or harassment must be one that a reasonable person in the same situation would experience under all the circumstances".)

in other situations not before the Court."[11] Because striking down a statute based on facial overbreadth is exceptionally "strong medicine",[12] the doctrine applies only in the uniquely important realm of First Amendment rights.

> Because of the important rights protected by the First Amendment, the overbreadth doctrine allows a litigant to challenge a statute on its face, rather than as applied to his own facts, and have a statute invalidated for overbreadth where it would be unconstitutional as applied to others even if not as applied to him. The doctrine is designed to short circuit the process by which a statute's constitutionality is addressed only on a case–by–case basis, thereby eliminating the chilling effect on legitimate First Amendment activity that would be created by leaving an unconstitutional statute on the books.[13]

A statute that regulates conduct, as opposed to speech, will not be considered unconstitutionally overbroad unless its impact on First Amendment activities is "both real and substantial in relation to the [statute's] plainly legitimate sweep."[14]

The stalking statute is plainly aimed at regulating conduct, rather than speech. Therefore, appellants' overbreadth challenge can succeed only upon a showing that the statute has a "substantial" effect on the exercise of First Amendment rights.

Appellants first attempt to demonstrate that the statute infringes on the right to travel and move freely in public

---

[11]*Broadrick v. Oklahoma*, 413 U.S. 601, 610, 37 L. Ed. 2d 830, 93 S. Ct. 2908 (1973).

[12]*State v. Talley*, 122 Wn.2d 192, 210, 858 P.2d 217 (1993) (quoting *Broadrick*, 413 U.S. 601 at 613); *but see State v. Walsh*, 123 Wn.2d 741, 749–50, 870 P.2d 974 (1994) (dismissing contention that impact on right to bear arms rendered statute overbroad); *State v. Spencer*, 75 Wn. App. 118, 127–28, 876 P.2d 939 (1994) (same); *State v. McBride*, 74 Wn. App. 460, 465, 873 P.2d 589 (1994) (applying overbreadth analysis in context of constitutional "right to move about freely and the right to travel").

[13]*State v. Motherwell*, 114 Wn.2d 353, 370–71, 788 P.2d 1066 (1990) (citations omitted).

[14]*O'Day v. King County*, 109 Wn.2d 796, 804, 749 P.2d 142 (1988).

places. They rely on a footnote in *Tacoma v. Luvene*[15] for the proposition that the right to travel is a First Amendment right which can trigger overbreadth analysis. Citing the United States Supreme Court's opinion in *Papachristou v. Jacksonville*,[16] the *Luvene* Court stated that "the right to walk, stroll, or wander aimlessly is a liberty 'within the sensitive First Amendment area' that is protected by the Fourteenth Amendment."[17]

*Papachristou* does not stand for the proposition that the right to wander freely is a First Amendment right. In *Papachristou*, the Court held that a statute prohibiting "wandering" was too vague to satisfy the demands of the due process clause. The *Papachristou* Court only mentioned the First Amendment once, in discussing the holding of another case.[18] We find no other authority for the proposition that the right to travel or move freely is a First Amendment right.[19]

Appellants also contend the statute is overbroad because it potentially infringes on a range of traditional First Amendment activities such as political protesting or newsgathering. One might "follow" another person in the course of these or other activities protected by the First Amendment. In order to obtain a conviction under the statute, however, the State must show that

> The person being followed is intimidated, harassed, or placed in fear that the stalker intends to injure the person or property of the person being followed or of another person. The

---

[15] *Tacoma v. Luvene*, 118 Wn.2d 826, 840 n.5, 827 P.2d 1374 (1992).

[16] *Papachristou v. Jacksonville*, 405 U.S. 156, 31 L. Ed. 2d 110, 92 S. Ct. 839 (1972).

[17] *Luvene*, 118 Wn.2d at 840 n.5 (*quoting Papachristou*, 405 U.S. at 164–65).

[18] *Papachristou*, 405 U.S. at 165–66 (discussing *Winters v. New York*, 333 U.S. 507, 92 L. Ed. 840, 68 S. Ct. 665 (1948)).

[19] *Cf. Lutz v. City of York*, 899 F.2d 255, 267, 87 A.L.R.4th 1081 (3rd Cir. 1990) ("no constitutional text other than the Due Process Clauses could possibly create a right of localized intrastate movement"); *Champagne v. Gintick*, 871 F. Supp. 1527, 1533 n.5 (D.Conn. 1994) ("Any constitutional right of *intra* state travel, if one exists, is . . . not protected by the First Amendment.").

feeling of fear, intimidation, or harassment must be one that a reasonable person in the same situation would experience under all the circumstances . . . [20]

■■ The statute did not, before the 1994 amendment, define the term "harass".[21] A broad definition of "harass" would include a great deal of constitutionally protected activity. Reporters or protesters commonly pursue their activities with knowledge that they "vex, trouble, or annoy"[22] others. In order to avoid constitutional infirmity, however, the court may give the term a more narrow definition.[23] RCW 9A.46.020 provides that a person is guilty of "harassment" if the person threatens another and causes reasonable fear that the threat will be carried out. We conclude that a person is only "harassed" within the meaning of the prior stalking statute if the person experiences a feeling of fear. Similarly, one must feel fear in order to be "intimidated", as the term is commonly understood.[24]

■ Thus read, the statute's impact on First Amendment activities is not substantial. It is conceivable that a reporter or protester could, in the course of following another with a legitimate First Amendment purpose, provoke a reasonable but mistaken sense of fear in the person being followed. But the risk of such misunderstandings is small. Any overbreadth in this regard may be addressed adequately on a case–by–case basis; it does not

---

[20]RCW 9A.46.110(1)(b).

[21]The 1994 amendment to the stalking statute defines "harassment" by reference to the civil anti–harassment statute, RCW 10.14.020. The Legislature has also added an explicit requirement that the "person being harassed or followed is placed in fear that the stalker intends to injure the person, another person, or property of the person or of another person." RCW 9A.46.110.

[22]See WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY 1031 (1966).

[23]Bellevue v. Miller, 85 Wn.2d 539, 536 P.2d 603 (1975).

[24]See WEBSTER's THIRD NEW INTERNATIONAL DICTIONARY 1184 (1966) ("intimidate": "to make timid or fearful: inspire or affect with fear").

justify a prospective invalidation of the statute.[25] We conclude that the stalking statute is not unconstitutionally overbroad.

## V.

▮ Appellants next contend the stalking statute is unconstitutionally vague. A statute is void for vagueness if it fails to give a person of ordinary intelligence fair notice of what conduct the statute prohibits, or is so indefinite that it encourages arbitrary arrests and convictions.[26] This court approaches a vagueness challenge with a strong presumption in favor of the statute's validity.[27] The party challenging the constitutionality of a legislative enactment has the burden of proving it is unconstitutionally vague beyond a reasonable doubt.[28]

Lee contends the term "follows" is unconstitutionally vague, insofar as it is interpreted to apply to his conduct of repeatedly appearing at Gross' place of employment. We think that upon reading the statute, persons of ordinary intelligence would understand that "following" includes deliberately and repeatedly traveling to a location where another person routinely goes in order to see or watch that person. The term is not unconstitutionally vague.

▮ Yates contends the phrase "without lawful authority" is unconstitutionally vague. In *State v. Smith*,[29] the Court held that the same phrase in Washington's anti-harassment statute did not render that statute impermissibly vague. The *Smith* Court determined that persons of ordinary intelligence could look to "readily ascertainable sources of law" to determine whether they have "lawful

---

[25]*See Broadrick*, 413 U.S. at 615–16; *Motherwell*, 114 Wn.2d at 370–72.

[26]*Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990); *Kolender v. Lawson*, 461 U.S. 352, 357, 75 L. Ed. 2d 903, 103 S. Ct. 1855 (1983).

[27]*State v. Smith*, 111 Wn.2d 1, 5, 759 P.2d 372 (1988).

[28]*State v. Maciolek*, 101 Wn.2d 259, 263, 676 P.2d 996 (1984).

[29]*State v. Smith*, 111 Wn.2d 1, 759 P.2d 372 (1988).

authority" to threaten or harass others.[30] While acknowledging there could be uncertainty as to the application of a "lawful authority" provision in various hypothetical situations, the Court declined to strike down the statute "merely because all of its possible applications cannot be specifically anticipated."[31]

> Many criminal laws would be rendered void, and still more would be narrowed to the point of ineffectiveness, if we permitted the vagueness doctrine to be used
>
>> to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.[32]

In addition to the First Amendment, there are many identifiable sources of law which could give individuals "lawful authority" to follow others.[33] Persons of common intelligence may look to these sources to determine whether their behavior violates the stalking statute. In some situations, there may be room for debate as to whether certain behavior is "lawful" under statutory or common law authority. In light of *Smith*, this possibility does not render the statute unconstitutionally vague.

 ██ Appellants also contend the statute is vague because it allows the finder of fact to base culpability on the perceptions of others, without requiring that the defendant act with a specific intent to cause harm. These factors do not render the statute unconstitutionally vague. The conduct proscribed by the statute is clear: One may

---

[30]*Smith*, 111 Wn.2d at 11.

[31]*Smith*, 111 Wn.2d at 10.

[32]*Smith*, 111 Wn.2d at 10 (quoting *Colten v. Kentucky*, 407 U.S. 104, 110, 32 L. Ed. 2d 584, 92 S. Ct. 1953 (1972)).

[33]*See, e.g.*, RCW 9.01.055 (granting citizens criminal and civil immunity when aiding a police officer); RCW 10.93.070 (defining powers of general authority peace officer); RCW 10.93.120 (peace officers' power to arrest); RCW 35.20.270 (powers of warrant servers).

not "follow" another person in such a way as to cause the person to experience a reasonable sense of fear. In order to convict, the State must show that the follower knew or reasonably should have known that his conduct was frightening. By definition, a person of normal intelligence would be able to consider "all the circumstances" and know whether his intentional following causes a sense of fear. The statute's reliance on an objective test precludes the conclusion that it is unconstitutionally vague.[34]

## VI.

Appellants contend the stalking statute violates procedural due process because it authorizes deprivation of a person's liberty interests without prior notice and hearing. RCW 9A.46.110(4) provides:

> Attempts to contact or follow the person after being given actual notice that the person does not want to be contacted or followed constitutes prima facie evidence that the stalker intends to intimidate or harass the person.

In Appellants' view, this section effectively allows one person to obtain a "no–contact" order against another without the usual procedural requirements.[35]

The State contends Appellants have failed to allege any "state action" which could give rise to due process protections.[36] We disagree. The State's threat of criminal sanction for following the person "after being given actual notice that the person does not want to be contacted"[37] is sufficient "state action" to trigger due process analysis.

Generally, in looking at the degree of process that

---

[34]*See State v. Talley*, 122 Wn.2d 192, 213, 858 P.2d 217 (1993) ("Requiring the State to prove that the threats placed the victim in 'reasonable fear' provides an objective standard by which to evaluate the harm to the victim").

[35]*See* RCW 26.50; RCW 10.14.080.

[36]*Southcenter Joint Venture v. NDPC*, 113 Wn.2d 413, 780 P.2d 1282 (1989).

[37]RCW 9A.46.110(4).

will be afforded in a particular case, the court balances the following interests: (1) the private interest to be protected; (2) the risk of erroneous deprivation of the interest by the government's procedures; and (3) the government's interest in maintaining the procedures.[38]

Appellants do not show that prohibition of "stalking" intrudes on any substantial private interest. The risk of erroneous deprivation of liberty is minimal, as the statute can only be enforced upon a showing that the defendant's following behavior was intentional, and that it provoked a reasonable sense of fear. Appellants do not deny that the State has a strong interest in curtailing stalking behavior. The statute does not violate procedural due process.

In his reply brief, Yates contends RCW 9A.46.110(4) impermissibly shifts the burden of persuasion as to an element of the charged crime.[39] This court generally does not consider issues raised for the first time by reply brief, as there is no opportunity for an opposing party to respond.[40] Neither party raised the burden–shifting issue below; it is not clear that the court in either case relied on section (4) of the statute in making its findings. Accordingly, we will not address this issue here.

## VII.

Yates contends the stalking statute violates equal protection by creating a "special allowance" for private detectives. RCW 9A.46.110(3) provides:

It shall be a defense to the crime of stalking that the defendant is a licensed private detective acting within the capacity of his or her license as provided by chapter 18.165 RCW.

---

[38]*Morris v. Blaker*, 118 Wn.2d 133, 144–45, 821 P.2d 482 (1992).

[39]*See Sandstrom v. Montana*, 442 U.S. 510, 61 L. Ed. 2d 39, 99 S. Ct. 2450 (1979).

[40]*State v. Manthie*, 39 Wn. App. 815, 826 n. 1, 696 P.2d 33, *review denied*, 103 Wn.2d 1092 (1985); *State v. Pleasant*, 38 Wn. App. 78, 81, 684 P.2d 761 *review denied*, 103 Wn.2d 1006 (1984); *State v. Alton*, 89 Wn.2d 737, 739, 575 P.2d 234 (1978); *see* RAP 10.3(c).

Because the exclusion for licensed private detectives does not implicate a fundamental right or a suspect class, equal protection requires only that the distinction have a "rational basis".[41] The statutory exemption for licensed private detectives is presumably based on the Legislature's conclusion that these individuals pose relatively little threat of harm to the people they follow. In view of the fact that private investigators are subject to other state regulations, the statutory distinction is not irrational.[42]

Both convictions are affirmed.

COLEMAN and GROSSE, JJ., concur.

Review granted at 130 Wn.2d 1016 (1996).

---

[41]*State v. Coria*, 120 Wn.2d 156, 171, 839 P.2d 890 (1992).

