UNITED STATES, Appellant,

v.

Loretta SMITH, Appellee.

No. 95–CO–1523.

District of Columbia Court of Appeals.

Argued March 20, 1996.

Decided Oct. 31, 1996.

Michael N. Levy, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese III, and Eric L. Yaffe, Assistant United States Attorneys, were on the brief, for appellant.

Robert L. Wilkins, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellee.

Before WAGNER, Chief Judge, and SCHWELB, Associate Judge, and PRYOR, Senior Judge.

PRYOR, Senior Judge:

This appeal presents the issue of the constitutionality of the District of Columbia stalking statute. A grand jury indicted appellee Loretta Smith on various charges, including two counts of misdemeanor stalking in violation of D.C.Code § 22–504(b) (1996 Supp.). The trial court dismissed the stalking counts nearly in their entirety based on its interpretation of the statute and its finding that part of the statute was unconstitutional. The government filed an interlocutory appeal challenging this ruling. We reverse and hold that the stalking statute is not unconstitutionally vague or overbroad.

### I. Procedural History

Appellee was indicted on two counts of misdemeanor stalking in violation of D.C.Code § 22–504(b) (1996 Supp.), three counts of threatening to injure a person in violation of D.C.Code § 22–2307 (1996 Repl.), and two counts of blackmail in violation of D.C.Code § 22–3852 (1996 Repl.).[1] Appellee was charged with stalking two complainants, and each stalking count read as follows:

> STALKING—in that she on more than one occasion engaged in conduct with the intent to cause emotional distress to [complainant] and placed [complainant] in reasonable fear of death or bodily injury by willfully, maliciously, and repeatedly following and harassing [complainant].

Appellee filed a motion to dismiss the stalking counts, arguing that the stalking law was unconstitutionally vague and overbroad on its face, and that applying the statute to appellee's conduct would violate her rights under the First Amendment to the Constitution. The trial court held four hearings in order to hear arguments regarding the constitutionality of the stalking statute. At the fourth hearing, the trial court ruled that part of the statute was unconstitutionally vague, and that the government could not prove harassment based on its interpretation of the statute. The result of the ruling was that the government was able to charge appellee only with "plac[ing] the complainant[s] in reasonable fear of death or bodily injury by ... willfully, maliciously and repeatedly following [them]."

The government filed an interlocutory appeal of this ruling rather than proceeding to trial on the limited stalking charge. The trial court denied the government's motion to continue the proceedings on the other counts pending resolution of the appeal. Following a jury trial, appellee was acquitted of the three threats charges and one blackmailing charge, and the trial judge declared a mistri-

---

1. The trial court later granted the government's motion to dismiss the two stalking counts in the indictment and file two informations charging misdemeanor stalking in order to correct a technical defect in the stalking counts in the indictment.

al on the other blackmailing charge because the jury could not reach a unanimous verdict.

## II. Appealability

■ Appellee has filed a motion to dismiss this appeal based on lack of jurisdiction. The government, however, contends this court has jurisdiction under D.C.Code § 23–104(c) (1996 Repl.):

> The United States ... may appeal an order dismissing an indictment or information or otherwise terminating a prosecution in favor of a defendant or defendants as to one or more counts thereof, except where there is an acquittal on the merits.

Appellee argues this court does not have jurisdiction because the trial court did not dismiss the stalking counts in their entirety. We conclude, however, that the trial court substantially dismissed the stalking counts through its interpretation of the statute. We are not persuaded that our decision in *United ed States v. Jones*, 423 A.2d 193 (D.C.1980), where we held that the trial court's refusal to reconsider its order vacating defendant's conviction and dismissing the indictment was not an appealable ruling, compels us to dismiss this appeal.[2] Therefore, we find the trial court's ruling with respect to the stalking counts was an appealable order pursuant to D.C.Code § 23–104(c).[3]

## III. Statutory Provision

The District of Columbia has defined the crime of stalking as follows:[4]

> Any person who on more than 1 occasion engages in conduct with the intent to cause emotional distress to another person or places another person in reasonable fear of death or bodily injury by willfully, maliciously, and repeatedly following or harassing that person, or who, without a legal purpose, willfully, maliciously, and repeatedly follows or harasses another person, is guilty of the crime of stalking and shall be fined not more than $500 or be imprisoned not more than 12 months, or both. Constitutionally protected activity, such as conduct by a party to a labor dispute in furtherance of labor or management objectives in that dispute, is not included within the meaning of this definition.

2. In *Jones*, the trial court dismissed the indictment on March 27, 1979. That dismissal was an appealable order. 423 A.2d at 195. Having failed to note a timely appeal from the order, the government filed a motion for reconsideration in the trial court on August 7, 1979, after the time for noting an appeal had expired. *Id.* at 194–95. It was from the order denying the motion for reconsideration that the government appealed. Since the failure to file a timely notice of appeal pursuant to D.C.App. R. II(b)(1) deprives this court of jurisdiction, we dismissed the appeal. *Id.* at 196. We rejected the government's argument that the statute authorizing the government to appeal from the dismissal of an indictment could be construed "expansively" to allow an untimely appeal. *Id.* at 195–96.

3. In another preliminary matter, the government argues in its brief that appellee does not have standing to claim that the stalking statute is unconstitutionally vague because her conduct "clearly falls within the core meaning of 'stalking' as defined by section 504(b)." We have considered the government's challenge to appellee's standing on this issue. However, we reject it and decide the merits.

4. While statutory provisions criminalizing the act of stalking are relatively recent additions to the criminal law of most states, almost every state now has some type of stalking statute. *See* Beth Bjerregaard, Ph.D., *Stalking and the First Amendment: A Constitutional Analysis of State Stalking Laws*, 32 CRIM.JUST.BULL. 307, 310 (July–August 1996); Harvey Wallace, *Stalkers, the Constitution, and Victims' Remedies*, 10 CRIM.JUST. 16 (Spring 1995). This has resulted in a proliferation of case law involving the constitutionality of state stalking statutes. While these cases are somewhat helpful, we note that the District of Columbia stalking statute is similar to those of other states in some respects, but different in others.

Because of the recent enactment of the variety of state stalking laws, the National Institute of Justice has offered a model act. Under this act, a person is guilty of stalking if he or she:
  1. purposefully engages in a course of conduct directed at a specific person that would cause a reasonable person to fear bodily injury or death;
  2. has knowledge or should have knowledge that the specific person will be placed in reasonable fear of bodily injury or death; and
  3. commits acts that induce fear in the specific person of bodily injury or death.
    Stalking activity involving threats to a member of a person's immediate family is included. Wallace, *supra*, at 17 (citing National Institute of Justice, U.S. Department of Justice, Project to Develop a Model Anti–Stalking Code for States 43 (1993)).

D.C.Code § 22–504.[5] The statute defines the term "harassing" as follows:

> (e) For the purposes of this section, the term "harassing" means engaging in a course of conduct either in person, by telephone, or in writing, directed at a specific person, which seriously alarms, annoys, frightens, or torments the person, or engaging in a course of conduct either in person, by telephone, or in writing, which would cause a reasonable person to be seriously alarmed, annoyed, frightened or tormented.

*Id.* The traditional approach to criminal offenses is to divide them into the *actus reus* (a voluntary act or omission) and the *mens rea* (required state of mind) requirements. *See* WAYNE R. LAFAVE, MODERN CRIMINAL LAW 96 (2d ed.1988). By approaching the relevant portions of the statute in this way, we find that there are four potential theories of liability:

1. Proving that the accused on more than one occasion engaged in conduct with the *intent to cause emotional distress* to the complainant by willfully, maliciously, and repeatedly *following* the complainant.

2. Proving that the accused on more than one occasion engaged in conduct with the *intent to cause emotional distress* to the complainant by willfully, maliciously, and repeatedly *harassing* the complainant.

3. Proving that the accused on more than one occasion placed the complainant in *reasonable fear of death or bodily injury* by willfully, maliciously, and repeatedly *following* the complainant.

4. Proving that the accused on more than one occasion placed the complainant in *reasonable fear of death or bodily injury* by willfully, maliciously, and repeatedly *harassing* the complainant.

These theories are to be read in the disjunctive, and therefore more than one theory can be charged in a single count. *See Turner v. United States,* 57 App. D.C. 39, 39–40, 16 F.2d 535, 535–36 (1926). Consequently appellee could be found guilty based on any of these four theories.[6]

## IV. Constitutionality

The trial court ruled that a portion of the stalking statute was unconstitutionally vague. Appellee has also argued that the statute is overbroad and that it is unconstitutional as applied to her conduct. We observe that the majority of other state courts which have ruled on the constitutionality of their state stalking statutes have upheld them against vagueness or overbreadth challenges.[7] We recognize that:

---

**5.** The government has not charged appellee with the third theory of liability, namely, "without a legal purpose, willfully, maliciously, and repeatedly follow[ing] or harass[ing] another person." Therefore, we do not review the constitutionality of this theory of liability, and will limit our discussion to the first two theories of liability.

**6.** We note that appellee contends that there are only three kinds of situations to which this statute applies instead of four. We do not agree with her contention, and discuss this issue in further detail in part IV.A.1, *infra* pages 9–10.

**7.** *E.g., State v. Randall,* 669 So.2d 223 (Ala.Crim. App.1995); *Culbreath v. State,* 667 So.2d 156 (Ala.Crim.App.1995); *People v. Heilman,* 25 Cal. App.4th 391, 30 Cal.Rptr.2d 422 (1994); *State v. Culmo,* 43 Conn.Supp. 46, 642 A.2d 90 (1993); *Bouters v. State,* 659 So.2d 235 (Fla.), *cert. denied,* — U.S. —, 116 S.Ct. 245, 133 L.Ed.2d 171 (1995); *Johnson v. State,* 264 Ga. 590, 449 S.E.2d 94 (1994); *People v. Bailey,* 167 Ill.2d 210, 212 Ill.Dec. 608, 657 N.E.2d 953 (1995); *Johnson v. State,* 648 N.E.2d 666 (Ind.App. 1

Dist.1995); *People v. White,* 212 Mich.App. 298, 536 N.W.2d 876 (1995); *State v. Martel,* 273 Mont. 143, 902 P.2d 14 (1995); *State v. Dario,* 106 Ohio App.3d 232, 665 N.E.2d 759 (1 Dist. 1995); *State v. Saunders,* 886 P.2d 496 (Okla. Crim.App.1994); *Commonwealth v. Schierscher,* 447 Pa.Super. 61, 668 A.2d 164 (1995); *State v. Fonseca,* 670 A.2d 1237 (R.I.1996); *State v. McGill,* 536 N.W.2d 89 (S.D.1995); *Woolfolk v. Commonwealth,* 18 Va.App. 840, 447 S.E.2d 530 (1994); *State v. Lee,* 82 Wash.App. 298, 917 P.2d 159 (Div.1 1996); *Luplow v. State,* 897 P.2d 463 (Wyo.1995). *But see, e.g., State v. Bryan,* 259 Kan. 143, 910 P.2d 212 (1996) (stalking statute struck down as unconstitutionally vague because terms lacked definition and there was no objective standard); *Commonwealth v. Kwiatkowski,* 418 Mass. 543, 637 N.E.2d 854 (1994) (stalking statute unconstitutionally vague because "repeatedly harassing" required a "course of conduct" and this could be interpreted as requiring more than one course of conduct; prospectively interpreted statute to remove "repeatedly" from the harassment-based offense); *State v. Norris-Romine,* 134 Or.App. 204, 894 P.2d 1221 (1995)

we are under a general obligation to interpret statutes so as to support their constitutionality.... This is equally true when, under the First Amendment, a statute ... is attacked on overbreadth grounds or on vagueness grounds under the Fifth Amendment.

*District of Columbia v. Gueory,* 376 A.2d 834, 836 (D.C.1977) (citations omitted).

## A. Vagueness

The Supreme Court has held that:

[t]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement.

*Kolender v. Lawson,* 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983) (citing *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Smith v. Goguen,* 415 U.S. 566, 94 S.Ct. 1242, 39 L.Ed.2d 605 (1974); *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972); *Papachristou v. City of Jacksonville,* 405 U.S. 156, 92 S.Ct. 839, 31 L.Ed.2d 110 (1972); *Connally v. General Constr. Co.,* 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926)); *see also Ford v. United States,* 498 A.2d 1135, 1138–39 (D.C.1985). Of the two considerations stated by the court, actual notice to citizens and arbitrary enforcement, the more important consideration of the two is whether the criminal statute provides minimal guidelines for enforcement. *Kolender, supra,* 461 U.S. at 358, 103 S.Ct. at 1858–59. As we evaluate the statute in light of these factors, we are mindful of the fact that "[c]ondemned to the use of words, we can never expect mathematical certainty from our language." *Grayned, supra,* 408 U.S. at 110, 92 S.Ct. at 2300. We also note that in the process of this review we will establish the proper construction of the statute, which is different from that articulated by the trial court.

### 1. "Emotional Distress" Stalking

■ One of the trial court's concerns regarding the stalking statute was that someone might be prosecuted for merely engaging "in conduct with the intent to cause emotional distress to another person." We recognize that there are potential vagueness problems with this interpretation. However, by examining the *mens rea* and *actus reus* components of the statute, it becomes clear that the elements of "willfully, maliciously and repeatedly following or harassing" must be present under each theory. This interpretation is also supported by the legislative history of the statute, in which the bill was described as follows:

The [bill] would prohibit any person, male or female, from willfully, maliciously, and repeatedly following *or* harassing another person, on more than one occasion:

1) with the intent to cause emotional distress;

2) with the effect of placing a person in reasonable fear of death or bodily injury; or

3) without a legal purpose.

The Committee on the Judiciary, Council of the District of Columbia, Report on Bill 10–42, Anti–Stalking Amendment Act of 1993, at 4 (April 28, 1993) (hereinafter Committee Report); *see Peoples Drug Stores, Inc. v. District of Columbia,* 470 A.2d 751, 753–55 (D.C.1983)(en banc)(allowing for review of legislative history when meaning of statute is ambiguous). Since the appropriate interpretation of the "emotional distress" theory of stalking requires proof of the additional elements of malice and willfulness, along with the *actus reus* of "repeatedly following or harassing," the trial court's concerns that this theory was unconstitutionally vague are unfounded.

### 2. "Layering" Issue

■ The trial court also dismissed the portions of the stalking counts that relied on harassment, because it concluded that the

---

(stalking statute struck down as unconstitutionally vague because of the vagueness of the term "legitimate purpose"). *See generally* Bjerregaard, *supra,* at 321–332 (analyzing appellate court decisions regarding the constitutionality of state stalking statutes).

government needed to prove a "repeated course of conduct," and the government conceded that it was only presenting evidence that appellee engaged in one course of conduct. As a preliminary matter, we agree with the trial court that the phrase "willfully, maliciously and repeatedly" modifies both following and harassing. *See Pallas v. Florida*, 636 So.2d 1358, 1360 (Fla.App. 3 Dist. 1994) (interpreting similar language), *aff'd*, 654 So.2d 127 (Fla.1995); *Culbreath, supra* note 5, 667 So.2d at 159–60.[8] Therefore, one may be prosecuted for "on more than one occasion" ... "repeatedly" ... "harassing" another person with the requisite intent. "Harassing," in turn, is in part defined as "engaging in a course of conduct ..." According to appellee, this combination of "on more than one occasion," "repeatedly," and "course of conduct" has created a "layering problem" which "fails to define the quantum of behavior necessary to commit the crime." We are unpersuaded.

This court has held that "in examining statutory language, it is axiomatic that '[t]he words of the statute should be construed according to their ordinary sense and with the meaning commonly attributed to them.'" *Peoples Drug Stores, supra*, 470 A.2d at 753 (quoting *Davis v. United States*, 397 A.2d 951, 956 (D.C.1979)). Therefore, we will look to the ordinary meaning of the terms and determine if they render the statute unconstitutionally vague. The Court of Criminal Appeals of Alabama recently dealt with a similar issue when confronted with the argument that Alabama's stalking statute was unconstitutionally vague because the terms "repeatedly," "series," and "course of conduct" were not defined. *Randall, supra* note 5, 669 So.2d at 226–27. The Alabama court looked to *Words and Phrases* to determine the commonly understood meanings of those words, and we will follow a similar approach.

■ The phrase "on more than one occasion" requires that the acts described have occurred at two or more distinct times. The Alabama court found that the word "re-

peatedly" means "more than once." *Id.* (citing 37 *Words and Phrases* 3). "Course of conduct" was defined by a New York court in its analysis of New York's stalking statute to mean "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose." *People v. Payton*, 161 Misc.2d 170, 612 N.Y.S.2d 815, 817 (N.Y.City Crim.Ct.1994). Each of these phrases has a slightly different meaning, and can easily be understood by a person of average intelligence. Under each theory, the perpetrator must commit the prohibited act "on more than one occasion," which requires some time separation between the acts. The perpetrator also must follow or harass someone "repeatedly," and therefore one act of following or harassment would not constitute stalking. If the perpetrator is being charged with harassment, the government must also show a "continuity of purpose" in that person's actions.

■ We find that these terms are not meant to modify each other and create the type of "layering" argued by appellee. Instead, each term should be viewed as its own separate requirement as defined above. The Alabama court stated in *Randall, supra*, that

> we do not find merit in Randall's contention that a person cannot be convicted of stalking unless the person knew or should have known the number of times and the specific time period the person must follow or harass the victim in order to be guilty of the offense of "stalking."

669 So.2d at 227. As a result of this interpretation the government is not required to prove more than one "course of conduct." We agree with the government that the statute requires proof that a defendant engaged in the conduct "on more than 1 occasion," that he or she acted "repeatedly," and that this conduct was a "course of conduct" in that it showed a continuity of purpose.

### 3. Application of Principles to this Statute

■ Looking at the statute, as interpreted above, we are obliged to determine if

---

8. We are not persuaded by the reasoning of some courts that have held that in similar stalking statutes "repeatedly" does not modify "harasses." *See People v. Heilman*, 25 Cal.App.4th 391, 30 Cal.Rptr.2d 422, 426–27 (1994); *Commonwealth, supra*, 637 N.E.2d at 857–58; *Fonseca, supra* note 5, 670 A.2d at 1239.

it withstands a constitutional vagueness challenge. We reiterate that there is a strong presumption against declaring a statute unconstitutional. *See Gueory, supra,* 376 A.2d at 836. The first element of the statute that narrows its application is the intent requirement. An individual must engage in the described conduct "willfully and maliciously" in order to be prosecuted under this statute.

> The [Supreme] Court, indeed, has recognized that the requirement of a specific intent to do a prohibited act may avoid those consequences to the accused which may otherwise render a vague or indefinite statute invalid. The constitutional vice in such a statute is the essential injustice to the accused of placing him on trial for an offense, the nature of which the statute does not define and hence of which it gives not warning ... But where the punishment imposed is only for an act knowingly done with the purpose of doing that which the statute prohibits, the accused cannot be said to suffer from lack of warning or knowledge that the act which he does is a violation of law.

*Screws v. United States,* 325 U.S. 91, 101–02, 65 S.Ct. 1031, 1035–36, 89 L.Ed. 1495 (1945). The additional requirement of "repeatedly" also narrows the statute, as explained by the Oklahoma Criminal Court of Appeals in its discussion of its stalking statute:

> The word "repeatedly" adds to the specific intent required to commit the offense as well as the restraint law enforcement officers and prosecutors must follow. Not until a perpetrator follows or harasses a victim more than once does the conduct rise to a criminal level. Additionally, by using the words, "willfully and maliciously," the legislature has provided that it is the perpetrator's intent which triggers this statute. This construction is consistent with the decisions in other jurisdictions. *See Pallas v. State,* 636 So.2d 1358 (Fla. App. 3 Dist.1994); *People v. Heilman,* 25 Cal.App.4th 391, 30 Cal.Rptr.2d 422 (1994).

*Saunders, supra* note 7, 886 P.2d at 497; *see also Randall, supra,* 669 So.2d at 227. Therefore, the requirements that the conduct must be done "willfully, maliciously and repeatedly" help define the offense so ordinary people can understand what conduct is prohibited, and also discourage arbitrary enforcement of the statute.

Moreover, the existence of an objective standard by which to measure the victim's reaction to the perpetrator's activities can also help to eliminate any vagueness problems. *See, e.g., Culbreath, supra,* 667 So.2d at 162; *Johnson, supra* note 5, 648 N.E.2d at 670; *State v. Lee,* 82 Wash.App. 298, 917 P.2d 159, 167–68 (Div.1, 1996); *see also* M. Katherine Boychuk, Comment, *Are Stalking Laws Unconstitutionally Vague or Overbroad?,* 88 Nw. U.L.REV. 769, 788–89 (1994). For example, the Court of Appeals of Indiana stated that under its stalking statute:

> [t]he actions must not only cause the victim to feel terrorized, frightened, intimidated, or threatened but must be such that would cause a reasonable person to feel so, as well.
>
> The reasonableness standards contained in the statutes provide a constraining and intelligible enforcement standard for those charged with enforcing the statute.

*Johnson, supra,* 648 N.E.2d at 670. The Supreme Court of Kansas struck down its stalking statute because it used words such as "alarms," "annoys" and "harasses" without providing definitions or an objective standard with which to measure the proscribed conduct. *State v. Bryan,* 259 Kan. 143, 910 P.2d 212 (1996). Some state courts have upheld their stalking statutes by reading an objective standard into the language of the statute. *See Bouters, supra* note 5, 659 So.2d at 238; *State v. Martel,* 273 Mont. 143, 902 P.2d 14, 19 (1995).

The District of Columbia stalking statute provides an objective standard in its theories of liability in which a perpetrator "places another person in reasonable fear of death or bodily injury." While the other theories of liability, where defendant "engages in conduct with the intent to cause emotional distress," do not necessarily contain such an objective requirement, we look to the definition of "harassing" to find a reasonable person standard:

> "harassing" means engaging in a course of conduct either in person, by telephone, or in writing, directed at a specific person,

which seriously alarms, annoys, frightens, or torments the person, or engaging in a course of conduct either in person, by telephone, or in writing, which would cause a reasonable person to be seriously alarmed, annoyed, frightened, or tormented.

D.C.Code § 22–504(e). We are mindful that there is concern that this section may be read to allow prosecutions in situations where harassing "seriously alarms, annoys, frightens, or torments the person," even though the victim's reaction is not reasonable. The Supreme Court in *Coates v. City of Cincinnati,* 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971) declared a law making it a criminal offense for "three or more persons to assemble ... on any of the sidewalks ... and there conduct themselves in a manner annoying to persons passing by ..." unconstitutionally void for vagueness:

> Conduct that annoys some people does not annoy others. Thus, the ordinance is vague, not in the sense that it requires a person to conform his conduct to an imprecise but comprehensible standard, but rather in the sense that no standard of conduct is specified at all. As a result, "men of common intelligence must necessarily guess at its meaning." *Connally v. General Construction Co.,* 269 U.S. 385, 391 [46 S.Ct. 126, 127, 70 L.Ed. 322] (1926).

*Id.* at 614, 91 S.Ct. at 1688. We must interpret the statute to support its constitutionality. Therefore, to avoid this potential vagueness problem, we emphasize that the definition of harassing requires that the victim be seriously alarmed, annoyed, frightened, or tormented, *and* that the conduct would cause a *reasonable* person to have such a reaction.

We recognize that the statutory prohibition against causing emotional distress by following another person, does not appear to contain an objective standard: [9]

> Proving that the accused on more than one occasion engaged in conduct with the *intent to cause emotional distress* to the

complainant by willfully, maliciously and repeatedly *following* the complainant.

However, the intent requirements and the "repeatedly" term help to mitigate any potential vagueness problems. We also find that the term "following" is easily understood and is not vague. Although the issue may be a close one, we conclude that this theory of liability is not unconstitutionally vague.

Construing the statute in this way, we find that ordinary people can understand what conduct is criminalized. We also conclude that the statute sufficiently limits the discretion of those who are responsible for enforcing it. Therefore, the stalking statute as interpreted here is not unconstitutionally vague.

### B. Overbreadth

Appellee also argued that the stalking statute is unconstitutionally overbroad. "A clear and precise enactment may nevertheless be 'overbroad' if in its reach it prohibits its constitutionally protected conduct." *Grayned, supra,* 408 U.S. at 114, 92 S.Ct. at 2302. The Supreme Court has also stated that "overbreadth claims, if entertained at all, have been curtailed when invoked against ordinary criminal laws that are sought to be applied to protected conduct." *Broadrick v. Oklahoma,* 413 U.S. 601, 613, 93 S.Ct. 2908, 2917, 37 L.Ed.2d 830 (1973). The Supreme Court in *Broadrick* went on to hold that:

> particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute must not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep.

*Id.* at 615, 93 S.Ct. at 2918.

The District of Columbia stalking statute criminalizes certain conduct, such as harassing, that may in certain situations include speech. However, this conduct does not rise to the level of criminality until it is undertaken "willfully, maliciously and repeatedly." Moreover, the conduct must be engaged in

---

9. Note that the other theory of liability that involves following does contain an objective standard:

   3. Proving that the accused on more than one occasion placed the complainant in reason-

*able fear of death or bodily injury* by willfully, maliciously and repeatedly *following* the complainant.
See *supra* page 383.

with "the intent to cause emotional distress" or to "place another person in reasonable fear of death or bodily injury." The statute also states that "[c]onstitutionally protected activity, such as conduct by a party to a labor dispute in furtherance of labor or management objectives in that dispute, is not included within the meaning of this definition." D.C.Code § 22–504. These requirements help limit the application of this statute to conduct that is not protected by the First Amendment. We find that the stalking statute is not substantially overbroad in light of its legitimate purpose. *See, e.g., Bouters, supra* note 5, 659 So.2d at 237 (upholding stalking statute against overbreadth challenge); *White, supra* note 5, 536 N.W.2d at 883; *Dario, supra* note 5, 665 N.E.2d at 763–64.

▮▮▮▮ Appellee's final argument is that the stalking statute is being unconstitutionally applied in this prosecution because included in the acts of stalking listed in the Bill of Particulars are constitutionally protected activities. This is essentially an extension of the facial overbreadth claim above. We are not persuaded by this argument because, as stated by the Supreme Court of Montana in responding to a similar claim:

> the criminality of this particular offense rests not on the fact that a defendant has followed a particular course of conduct, which, if embarked upon once, might not be objectionable. The criminality of the offense arises when a defendant engages in such conduct repeatedly, purposely or knowingly causing another person substantial emotional distress or reasonable apprehension of bodily injury. Without such mental state, a charge under the statute must fail.

*Martel, supra,* 902 P.2d at 19. Therefore, while certain of appellee's actions may appear to be constitutionally protected when viewed separately, when such activities are repeated and combined with the criminal intent necessary to violate the statute, they are no longer protected. It is clear that one does not have a constitutional right to engage in "willfully, maliciously and repeatedly following or harassing" someone. Therefore, if appellee's conduct is found to satisfy the requirements of stalking, her constitutional rights will not be violated by this prosecution.

## V.  Conclusion

Having reviewed this statutory offense in the traditional way—elements of proscribed behavior and the required state of mind—we conclude that, under a reasonable construction, based on case authority, the statute withstands the challenges advanced here and is not, on its face, unconstitutionally vague or overbroad. The statute may also be constitutionally applied to appellee's conduct. Accordingly, we reverse the rulings of the trial court and remand for trial.

*So ordered.*

SCHWELB, Associate Judge, concurring:

I join Judge Pryor's opinion for the court, but add a few words to explicate further the reasons for my disagreement with Ms. Smith's position.

As Judge Pryor notes, maj. op. at 382 n. 4, Ms. Smith asserts that the statute applies only to three kinds of situations, rather than to four. She bases this contention on the theory that the language "willfully, maliciously, and repeatedly follows or harasses" modifies the clause "places another person in reasonable fear of death or bodily injury," but not the earlier clause "engages in conduct with the intent to cause emotional distress to another person." I am unable to agree with this construction. To suggest that conduct which is intended to cause emotional distress violates the statute, where that conduct does not include following or harassing, would make the statute apply to a situation which has nothing to do with stalking, as that word is commonly understood. Moreover, as Judge Pryor demonstrates, *id.* at 384–85, the construction urged on us by Ms. Smith is refuted by the legislative history.

In addition, I think it important to emphasize that the anti-stalking law uses a variety of phrases—"on more than one occasion," "repeatedly," and "course of conduct"—all of which are designed to exclude from the ambit of the statute isolated acts. Because isolated

acts are so excluded, it is unreasonable to suppose, as Ms. Smith asserts, that the statute is violated only where there have been repeated courses of conduct. As a matter of common sense, repeated acts are sufficient; so is a single course of conduct. Plural plurals are not required.