Michael S.A. RICHARDSON,
M.D., Appellant,

v.

Aaron EASTERLING, Appellee.

No. 04–FM–159.

District of Columbia Court of Appeals.

Argued June 9, 2005.
Decided July 14, 2005.

Thomas E. Lester, with whom Calvin Steinmetz, Washington, DC, was on the brief, for appellant.

Richard J. Mudd, for appellee.

Before SCHWELB and FARRELL, Associate Judges, and BURGESS, Associate Judge, Superior Court of the District of Columbia.*

SCHWELB, Associate Judge:

Michael S.A. Richardson, M.D., appeals from an order of the trial court, issued on February 6, 2004, dismissing Richardson's First Amended Petition for a Civil Protection Order (CPO).[1] In his First Amended Petition, Richardson asked the court to bar Aaron Easterling, Richardson's former homosexual lover, from continuing to engage in conduct which, according to Richardson, constituted "stalking" within the meaning of D.C.Code § 22–404(b) (2001), and an "intrafamily offense" within the meaning of D.C.Code § 16–1001 (2001). The trial judge ruled that no intrafamily offense had been alleged, reasoning that "the Petition sounded in defamation and neither abuse nor violence had been alleged." We conclude that although the Intrafamily Offenses Act does not apply to the alleged defamatory statements by Easterling of which Richardson complains, it does reach Richardson's allegations that Easterling made numerous threatening, abusive and harassing telephone calls directly to Richardson, thereby committing the criminal offense of stalking. Accordingly, we re-

---

* Sitting by designation pursuant to D.C.Code § 11–707(a) (2001).

1. The judge also dismissed Richardson's initial Petition.

verse the judgment and reinstate, in part, Richardson's First Amended Petition.

## I.

On or about November 19, 2003, Richardson filed his initial "Petition and Affidavit for a Civil Protection Order" against Easterling. The Petition and Affidavit were written on standard forms provided by the Superior Court. Richardson alleged that he and Easterling "Now or Previously Having Shared the Same Residence" and had a "Romantic/Dating Relationship." Richardson further alleged that he resided in the District of Columbia, and he answered in the affirmative the question "Did any incident described below occur in the District of Columbia?" Substantively, Richardson alleged that Easterling had:

1. [t]hreatened to contact police and falsely accuse [P]etitioner of knowingly spreading communicable diseases;

2. [c]ontacted District of Columbia Board of Medicine, [and] made false statements regarding Petitioner's sex life and the intentional spread of sexually transmitted. diseases by Petitioner;

3. [m]ade calls to [P]etitioner's colleagues and divulged personal information regarding [P]etitioner and made false accusations regarding [P]etitioner's sex life and [P]etitioner's knowing transmission of sexually transmitted diseases;

4. [c]ontacted Petitioner's secretary, by telephone, and made remarks regarding Petitioner's sexuality and the intentional spread of sexually transmitted diseases by Petitioner;

5. [c]ontacted a female colleague of [P]etitioner and advised colleague that [P]etitioner was a homosexual and was knowingly spreading sexually transmitted diseases;

6. [a]ppropriated, from Petitioner's home, forged and attempted to pass a check on a closed financial account in Petitioner's name, resulting in a criminal investigation of Petitioner by Maryland authorities.[2]

On November 24, 2003, the trial court issued an *ex parte* Temporary Protection Order (TPO) prohibiting Easterling, for a period of fourteen days, from, *inter alia*,

1. threatening, stalking, harassing or physically abusing Richardson;

2. contacting Richardson in person, by telephone, in writing or "in any other manner, either directly or through a third party";

3. contacting Richardson's "colleagues, family members, or neighbors." [3]

The third of these provisions was added to the order in handwriting, apparently by (or with the consent of) the judge.

An evidentiary hearing on the merits of Richardson's initial Petition was scheduled for January 9, 2004. On January 5, 2004, Easterling filed a Motion to Strike or Dis-

---

2. In his brief on appeal, Easterling explains the context of these allegedly defamatory statements as follows:

    Mr. Easterling does not hide the fact that he has been diagnosed as HIV positive four months ago by an infectious disease physician at the George Washington University Hospital in the District of Columbia. It is his contention that his condition was the result of consensual unprotected sexual contact with Dr. Richardson, his domestic partner, at a time when Dr. Richardson

    knew that he himself was HIV positive. Mr. Easterling cannot comprehend how the communication of this fact can be a "criminal offense" against Dr. Richardson. To the contrary, compelling Mr. Easterling to hide such information is offensive in and of itself.

3. Easterling was also ordered to stay "at least 100 feet away" from Richardson's "person, home [and] work place."

miss the Petition. In his motion, Easterling claimed "with conviction" that none of the conduct complained of constituted a criminal offense against Richardson within the meaning of D.C.Code §§ 16–1001 *et seq.* Easterling added:

> More importantly, it is Mr. Easterling's position that it was his ethical, if not legal, duty to report Dr. Richardson's behavior.

Easterling asked the court to strike or dismiss the Petition and to award Easterling his costs, as well as reasonable counsel fees.

On January 9, 2004—the date of the merits hearing—Richardson filed his First Amended Petition. In this pleading, Richardson broadened his allegations well beyond the defamatory conduct which was the gravamen of the initial Petition. He alleged, *inter alia,* that Easterling had made numerous abusive and threatening telephone calls directly to Richardson, and that Easterling's conduct was "specifically intended to alarm, annoy, frighten and torment [Richardson] or to otherwise cause [Richardson] emotional distress, a criminal offense pursuant to D.C.Code [§§ ]22–404(b) *et seq.*" [4]

On February 6, 2004, following the hearing held on January 9, 2004, the trial judge dismissed Richardson's initial Petition and

---

**4.** Paragraphs 5 through 14 of Richardson's First Amended Petition read as follows:

> 5. That Respondent engaged in such threatening and harassing conduct via telephone, in person and or in writing by contacting Petitioner, as well as Petitioner's family, friends and professional community.
> 6. That Respondent has repeatedly threatened and sought to "ruin" Petitioner's personal and professional life through repeated, harassing telephone calls and the attempted publication of scurrilous allegations regarding Petitioner's personal and professional life.
> 7. That, in addition to the allegations contained in Petitioner's November 19, 2003 Petition and Affidavit, Respondent, on or about November 1, 2003, in the District of Columbia, personally threatened to "ruin" Petitioner and demanded that Petitioner pay him money.
> 8. That on or about November 24, 2003, Respondent made multiple phone calls to Petitioner's employer and made scandalous accusations with regard to Petitioner's personal and professional life.
> 9. That on or about November 6, 2003, Respondent made telephone calls to Petitioner and left abusive messages, demanding Petitioner's new home address and threatening to harass Petitioner in his new home.
> 10. That on or about November 10, 2003, Respondent made telephone calls to Petitioner and threatened that he knew Petitioner's new home address in Mississippi

> and that he planned to harass Petitioner at his new home and place of work.
> 11. That on or about November 12, 2003, Respondent telephoned Petitioner and threatened to distribute "fliers and bumper stickers" in an effort to harass Petitioner in his home and place of business. Respondent further stated that he was contacting Petitioner's landlord who Respondent claimed would "be watching" Petitioner.
> 12. That on or about November 13, 2003, Respondent telephoned Petitioner and advised him that he would continue to contact all of Petitioner's family, friends and colleagues and let them know "what kind of a piece of shit you really are." Respondent further advised Petitioner that he would be coming to Petitioner's place of business soon.
> 13. That on or about November 21, 2003, Respondent made multiple telephone calls to Petitioner and left abusive messages in which he advised Petitioner that he "was not going to stop no matter what legal papers you serve on me."
> 14. That Respondent's repeated, abusive and threatening phone calls are intended solely to frighten, torment and annoy Petitioner, for the purpose of interfering with Petitioner's personal and professional life.

Richardson's prayer for relief was far narrower in scope than was the TPO issued by the trial court, and excluded any request for the constitutionally dubious remedy of barring Easterling from contacting or speaking with Richardson's colleagues or neighbors.

First Amended Petition. As we have noted above, the judge grounded her decision on her view that Richardson had failed to allege any abuse or violence constituting an intrafamily offense. This timely appeal followed.

## II.

■■■ In holding that no intrafamily offense had been alleged, the trial judge effectively dismissed Richardson's First Amended Petition for failure to state a claim upon which relief may be granted. The only issue before us in reviewing such a dismissal is whether the complaint is legally sufficient, and to test its adequacy we apply the same principles as those utilized by the trial court. *Aronoff v. Lenkin Co.,* 618 A.2d 669, 684 (D.C.1992). Accordingly, our review of the judge's decision, as of any ruling on a question of law,[5] is *de novo. Osei–Kuffnor v. Argana,* 618 A.2d 712, 713 (D.C.1993). In determining the legal sufficiency of Richardson's First Amended Petition, we must accept his allegations as true, and we construe them in the light most favorable to Richardson. *McBryde v. Amoco Oil Co.,* 404 A.2d 200, 202 (D.C.1979). Dismissal for failure to state a claim upon which relief may be granted. is only permissible "where it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

Richardson's claim is based on D.C.Code § 16–1005 (2001), which provides in pertinent part:

If, after a hearing, the [court] finds that there is good cause to believe [that] the respondent has committed or is threatening [to commit] an intrafamily offense, it may issue a [CPO].

The term "intrafamily offense" is defined in the statute as

an act punishable as a criminal offense committed by an offender upon a person:

(A) to whom the offender is related by blood, legal custody, marriage, having a child in common, or with whom the offender shares or has shared a mutual residence; or

(B) with whom the offender maintains or maintained a romantic relationship not necessarily including a sexual relationship. A person seeking a protection order under this subparagraph shall reside in the District of Columbia or the underlying intrafamily offense shall have occurred in the District of Columbia.

D.C.Code § 16–1001(5). Richardson has alleged, and indeed it is undisputed, that he and Easterling have previously both shared a residence and maintained a romantic relationship. At the time Richardson filed his initial Petition, he resided in the District of Columbia, and he claims that Easterling's allegedly unlawful conduct occurred in the District. The disputed question is whether Richardson's pleadings sufficiently allege that Easterling has committed one or more "act[s] punishable as a criminal offense" within the meaning of the Intrafamily Offenses Act.

■■■ Although the trial judge ruled that the Act has no application where "neither abuse nor violence had been alleged," we discern no such restriction in the language of the statute, which embraces any "act punishable as a criminal offense" by a person subject to the Act. "[T]he words of the statute should be construed according

---

5. The question before us is essentially one of statutory construction, a quintessential issue of law subject to *de novo* review. *In re Doe,* 855 A.2d 1100, 1102 (D.C.2004).

to their ordinary sense and with the meaning commonly attributed to them." *United States v. [Loretta] Smith*, 685 A.2d 380, 385 (D.C.1996) (citations omitted). Moreover, "[t]he paramount consideration concerning [the Intrafamily Offenses Act] is that it is remedial, and the Act must be liberally construed in furtherance of its remedial purpose." *Cruz–Foster v. Foster*, 597 A.2d 927, 929 (D.C.1991).[6] Under these circumstances, we may not read into the Act limitations or restrictions which it does not contain. We therefore conclude that the Act applies, as its terms state, to any criminal offense committed by an offender upon a person related to him or her within the meaning of § 16–1001(5).

█ Richardson contends that in his First Amended Petition, he has fairly alleged that Easterling has committed the criminal offense of stalking. We agree. In *[Loretta] Smith*, this court, in upholding the constitutionality of our anti-stalking statute, discussed its reach and coverage in some detail. We concluded that the prosecution in a stalking case may establish a violation of the statute in a number of different ways, one of which is by

> [p]roving that the accused on more than one occasion engaged in conduct with

the intent to cause emotional distress to the complainant by willfully, maliciously, and repeatedly harassing the complainant.

685 A.2d at 383.[7]

We entertain no doubt that the First Amended Petition contains allegations of the type of stalking described in the foregoing quotation from *[Loretta] Smith*. Accordingly we conclude that the trial judge erred in dismissing Richardson's allegations of stalking, which constitute all or parts of paragraphs 5, 7, 9, 10, 12, 13 and 14 of the First Amended Petition.

█ We agree with the trial judge, however, that Richardson's claims that Easterling defamed him do not implicate the Intrafamily Offenses Act. If the representations allegedly made by Easterling about Richardson were both defamatory and false, Richardson had an obvious remedy in tort.[8] A defamatory statement is not, however, a criminal act. Moreover, an order prohibiting Easterling from making representations to others regarding Richardson's allegedly culpable conduct at least arguably constitutes constitutionally impermissible prior restraint of speech; ordinarily, "equity does not enjoin a libel

---

**6.** Although a prime aim of the Intrafamily Offenses Act was to protect victims of family abuse from acts and threats of violence, *Cruz–Foster*, 597 A.2d at 929, the statutory language excludes any notion that physical violence, or the threat thereof, was the only harm that the Act was designed to address. In fact, the legislative history of the Intrafamily Offenses Act, quoted by the trial judge in her order, reveals the recognition by the Act's proponents that domestic violence "may be carried out by physical, sexual *or emotional* violence." COUNCIL OF THE DISTRICT OF COLUMBIA, COMMITTEE ON THE JUDICIARY, REPORT ON THE INTRAFAMILY OFFENSES AMENDMENT ACT OF 1982 (BILL 4–195), at page 1 (May 12, 1982) (emphasis added). The allegations of stalking in this case, if true, may fairly be characterized as constituting emotional violence.

**7.** "Harassing" is defined in the anti-stalking statute as follows:

> For the purpose of this section, the term "harassing" means engaging in a course of conduct either in person, by telephone, or in writing, directed at a specific person, which seriously alarms, annoys, frightens, or torments the person, or engaging in a course of conduct either in person, by telephone, or in writing, which would cause a reasonable person to be seriously alarmed, annoyed, frightened, or tormented.

D.C.Code § 22–404(e) (2001).

**8.** A number of Richardson's allegations, if substantiated, also appear to make out a potential case of intentional infliction of emotional distress.

or slander." *Comm. for Creative Non-Violence v. Pierce,* 259 U.S.App. D.C. 134, 143, 814 F.2d 663, 672 (1987). The Intra-family Offenses Act should be construed "so as to avoid serious doubts as to their constitutionality." *Riggs Nat'l Bank v. District of Columbia,* 581 A.2d 1229, 1242 (D.C.1990) (quoting *Communications Workers of Am. v. Beck,* 487 U.S. 735, 762, 108 S.Ct. 2641, 101 L.Ed.2d 634 (1988)). Accordingly, we discern no error in the trial court's decision insofar as it affects allegations of defamation and like conduct, as found in the first five paragraphs of Richardson's initial Petition and in paragraphs 6, 8, 11 and 12 of the First Amended Petition.

### III.

For the foregoing reasons, the judgment appealed from is reversed to the extent specified above. The case is remanded to the trial court for further proceedings consistent with this opinion.

*So ordered.*[9]

---

9. Since the initial Petition was filed, Richardson has moved to Mississippi, and he was living in Mississippi when he filed the First Amended Petition. In addition, we note that much time has elapsed since the events described in the initial Petition and First Amended Petition occurred. "The Act does not authorize the issuance of permanent injunctions." *Cruz–Foster,* 597 A.2d at 929. We leave it to the trial court to decide, in the first instance, whether these geographical realities and the passage of time affect the appropriate disposition of the case on remand.