428

[No. 61858-0-I.   Division One.   August 3, 2009.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES ALFRED HAINES, *Appellant*.

*Sarah M. Hrobsky* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Dennis J. McCurdy, Deputy*, for respondent.

¶1 DWYER, A.C.J. — James Haines was convicted of felony harassment, misdemeanor harassment, and misdemeanor stalking after he threatened Kebrah Bezabih on

two separate occasions. He now appeals, contending that insufficient evidence supports his stalking conviction. According to Haines, this is so because the stalking statute requires proof of at least six predicate acts of harassment. Alternately, he contends that the statute is unconstitutionally vague. Finally, he contends that his combined convictions violate the constitutional guaranty against double jeopardy. Holding that proof of two incidents of harassment is sufficient to support a conviction for stalking, that the stalking statute is not unconstitutionally vague, and that Haines's remaining arguments are contrary to existing case law, we affirm.

I

¶2 Haines was charged as a result of incidents that occurred while Bezabih was working at her job as a convenience store cashier.[1] On Christmas Eve 2007 Haines entered the store and, without any particular warning, informed Bezabih, "I want to fuck you." Bezabih, at a loss for an appropriate response, simply kept working. Haines then said to her, "I'm talking to you; I want to fuck you." Bezabih attempted to deflect Haines's attention, telling him, "I'm just here to work." Haines ignored this response and proceeded to enumerate various sexual positions that he wished to try with Bezabih. After doing this for a while, Haines then pointed at a customer whom Bezabih was assisting, stating, "[A]ctually I want to fuck you with this guy." Haines then became increasingly insistent, telling Bezabih, "I want to fuck you, bitch."

¶3 Bezabih responded, "[Y]ou don't know me; why do you want to, you know, do that?" Haines replied, "[B]ecause you're a fucking immigrant, come over here and use [an] American to get a green card." Bezabih then informed

---

[1] These incidents involved the substantial use of profanity by Haines. Because Haines's convictions were based in large part on his statements, and he contends that his actions were insufficient to support his convictions, it is necessary to recount this language, as spoken.

Haines that she already possessed a green card and did not use anyone else to obtain it.

¶4 Haines then left the store. Bezabih followed him outside, worried that he was disturbing customers. When she exited the building, Haines threw an open can of soda at her, which she dodged. Haines then approached her while she stood her ground with her arms crossed, continuing to tell her that he wanted to "fuck" her and calling her a "bitch." A regular customer then began to pull her back into the store, telling her that she should come back inside, to which Haines responded by turning to the customer and telling him "that's not your fucking business." Haines then informed Bezabih, "I'm gonna kill you." At that point, the customer succeeded in pulling Bezabih back inside. Haines then got into a car and drove away.

¶5 After Haines left, 911 was called, police were dispatched, and Bezabih and the witnesses present in the store recounted to the police that which had occurred.

¶6 A little over a month later, Bezabih was again at work when Haines returned to the convenience store. No customers were present. Haines walked directly to where Bezabih was sitting and said, "[H]ey, bitch, remember me?" Bezabih responded, "[Y]eah, I remember you." Haines then told her, "Remember, I'm gonna kill you. Don't forget that. So, I just came to remind you." He then told Bezabih, "I'm giving you three days . . . to say goodbye to your friends and your lovers," and "you're a fucking immigrant, that's why I want to kill you."

¶7 At this point, the same regular customer who had pulled Bezabih back inside during the Christmas Eve incident walked into the store. Haines realized that someone else had entered and he looked at the customer. When Haines realized who it was, he said, "Remember me?" to which the customer responded, "Yeah, I remember you." Haines then said to him, "[C]an you tell this bitch that I'm gonna kill her?" Haines then walked out of the store.

¶8 Frightened, Bezabih then picked up the store's telephone to call 911. She looked out the window while doing so

and realized that Haines was still standing in front of his car, by the store's gasoline pumps, watching her. When he saw her pick up the phone, he returned to the store. He then repeated to Bezabih, "I'll give you three days. You don't want to live . . . three days? You trying to call cops?" Frightened, Bezabih responded, "[N]o, I'm not trying to call cops; I'm just trying to call my friend." Haines responded, "[Y]ou should live [the] three days that I'm . . . giv[ing] you." Haines then told Bezabih that he knew when she finished work. He then left the store, walked out to his car, and drove away.

¶9 Bezabih believed that Haines intended to carry out his threats to kill her. She again called 911 and reported the incident to the police, who came to her workplace to investigate. Instead of taking the bus home, as she usually did, she also called her boyfriend, Tedras Shiferaw, to come pick her up and take her home.

¶10 Shiferaw came to get Bezabih when her shift ended. He then drove her home, where he parked. The two were talking about the evening's events when Bezabih glanced across the street. When she did, she saw Haines standing in a gas station parking lot, facing her apartment.

¶11 When the couple saw Haines, Bezabih called 911. Shiferaw, in turn, walked across the street to the gas station. Shiferaw said hello to Haines and asked him, "[H]ow are you doing, sir?" Haines responded that he was "trying hard not to kill somebody." Shiferaw did not continue to speak to Haines, but instead went inside the gas station's store and watched him from inside.

¶12 After a period of time, Haines got into his car and started driving away. By this point, Shiferaw had left the gas station. When he saw Haines driving away, he grabbed Bezabih's telephone, got into his own car, and started following Haines. Following Shiferaw's directions, police officers located Haines's car, pulled him over, and ultimately arrested him.

¶13 The State charged Haines with felony harassment, malicious harassment, misdemeanor harassment, and mis-

demeanor stalking. A jury convicted him of felony harassment, misdemeanor harassment, and misdemeanor stalking.

¶14 Haines appeals.

## II

¶15 Haines first contends that insufficient evidence was introduced at trial to support his conviction for stalking.[2] He does not dispute that the events recounted above occurred; rather, he contends that the text of the stalking statute requires that a person harass his or her victim on at least six separate occasions before being guilty of stalking. According to Haines, the evidence presented allowed the jury to conclude that he harassed Bezabih on, at most, two occasions. Thus, Haines contends, his conviction for stalking must be reversed. We disagree.

¶16 The stalking statute provides that a person can be found guilty of stalking another person if, with the requisite mental state, he or she "repeatedly" harasses the victim to the extent that the victim reasonably fears harm:

A person commits the crime of stalking if, without lawful authority and under circumstances not amounting to a felony attempt of another crime:

(a) He or she intentionally and repeatedly harasses or repeatedly follows another person; and

(b) The person being harassed or followed is placed in fear that the stalker intends to injure the person, another person, or property of the person or of another person. The feeling of fear must be one that a reasonable person in the same situation would experience under all the circumstances; and

---

[2] "The test for determining the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. When the sufficiency of the evidence is challenged in a criminal case, all reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant. A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992) (citations omitted).

(c) The stalker either:

(i) Intends to frighten, intimidate, or harass the person; or

(ii) Knows or reasonably should know that the person is afraid, intimidated, or harassed even if the stalker did not intend to place the person in fear or intimidate or harass the person.

RCW 9A.46.110(1). "Repeatedly" is defined as "on two or more separate occasions," RCW 9A.46.110(6)(e), while "harasses" means "unlawful harassment as defined in RCW 10.14.020." RCW 9A.46.110(6)(c).

¶17 RCW 10.14.020, in turn, requires a "course of conduct," which is defined as a "series of acts over a period of time, however short":

(1) "Unlawful harassment" means a knowing and willful course of conduct directed at a specific person which seriously alarms, annoys, harasses, or is detrimental to such person, and which serves no legitimate or lawful purpose. The course of conduct shall be such as would cause a reasonable person to suffer substantial emotional distress, and shall actually cause substantial emotional distress to the petitioner, or, when the course of conduct would cause a reasonable parent to fear for the well-being of their child.

(2) "Course of conduct" means a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose. "Course of conduct" includes, in addition to any other form of communication, contact, or conduct, the sending of an electronic communication. Constitutionally protected activity is not included within the meaning of "course of conduct."

¶18 According to Haines, this layering of definitions requires that a defendant engage in at least six independent acts of harassment to create criminal culpability under the stalking statute. In other words, Haines contends that, in order to be guilty of stalking by harassment, a person must "repeatedly harass" the victim, which under the statutory definition ends up meaning that the person must "repeatedly" engage in a "course of conduct," which requires a "series of acts over a period of time." Pointing to the

dictionary definition of "series"—"a group of usu. three or more things"[3]—Haines argues that this layering results in the statute requiring that the State prove at least six separate incidents of harassment in order to secure a conviction for stalking: two for the "repeatedly" and three for the "series."

¶19 Haines misreads the stalking statute.

¶20 Even if six separate "acts" were required for a stalking defendant's behavior to constitute a "repeated" "course of conduct," nothing in the statute even remotely indicates that each one of those six acts would, by itself, have to constitute an independent act of harassment. To the contrary, both the plain text and structure of the statutory sections at issue indicate that what must be "repeated" is a "course of conduct" that "seriously alarms, annoys, harasses, or is detrimental" to the victim. RCW 10.14.020(1). There is no basis whatsoever to suppose that each of the separate acts that comprise that course of conduct must be vexatious when taken in isolation. It is the *combination* of separate acts—none of which is necessarily criminal in its own right—that must be "seriously alarm[ing], annoy[ing], harass[ing], or detrimental" to the victim in order for the perpetrator to have committed the criminal offense of stalking. RCW 10.14.020(1).

¶21 Pursuant to RCW 10.14.020(1), any *single* incident of harassment must comprise a harassing "course of conduct" as defined by RCW 10.14.020(2)—i.e., a "series of acts over a period of time, however short." Haines would have us read this statute in such a manner as to judicially insert the words "of harassment" after the phrase "series of acts." However, apart from the obvious fact that the text of the statute does not actually include such language, reading the statute in such a manner would render it completely circular and, thus, nonsensical. "Harassment" would require a "course of conduct," which would itself be defined as "a series of acts of harassment." Putting aside the bizarre-

---

[3] WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2073 (1993).

ness inherent in reading the common phrase "course of conduct" in such a manner that it necessarily includes a wrongful act (harassment), such a reading would cause the two subsections of RCW 10.14.020 to be mutually self-referential and, thus, devoid of meaning. This is not a sensible reading of the statutory provisions at issue. The plain meaning of the words at issue is, again, that it is the *series* of acts that, when combined, serve to sufficiently alarm, annoy, or cause detriment such that the definition of "harassment" is met.

¶22 Haines's contrary reading of RCW 10.14.020 is also inconsistent with the common interpretation of that statute in its nonstalking application—i.e., as setting forth the requirements for antiharassment protection orders. The layering problem that Haines believes he identifies is not endemic to stalking; the stalking statute only aggravates the supposed layering by adding an additional "layer." Haines would have us read the requirements for the issuance of antiharassment protection orders—that the defendant harasses the victim as defined by RCW 10.14.020, *see* RCW 10.14.080—to require three entirely separate incidents of harassment before further harassing contact could be prohibited. Prior decisions addressing both stalking and antiharassment orders are contrary to such a reading of the statute. *See State v. Askham*, 120 Wn. App. 872, 876-77, 86 P.3d 1224 (2004) (single count of harassment plus additional acts that were not criminal in themselves supported conviction for stalking); *State v. Noah*, 103 Wn. App. 29, 34-36, 9 P.3d 858 (2000) (antiharassment order properly based on combination of acts that did not independently constitute harassment).

¶23 Further, Haines's reading of the stalking statute, requiring "repeated" "course[s] of conduct," meaning a "series of acts" of harassment performed "on two or more separate occasions," creates inconsistencies in the statutory scheme where none would otherwise exist. That is, Haines's reading renders unclear whether the language of the stalking statute itself—which very specifically requires no more

than two incidents of harassment—is overridden by the more general language in the earlier-passed definitional sections of the antiharassment protection order statute. Even were Haines's reading of the statute plausible (it is not), this inconsistency would be resolved in the manner the State suggests, not according to Haines's theory, because when there is cross-referencing between "two general or specific statutes which are inconsistent—then the more recent prevails." 2B NORMAN J. SINGER, STATUTES AND STATUTORY CONSTRUCTION § 51.05, at 257-59 (6th ed. 2000).

¶24 In sum, Haines focuses on the individual acts that together comprise "harassment" as defined by RCW 10.14-.020 and erroneously supposes that each of those acts, by itself, must constitute harassment. This theory is contrary to the plain text of the statute and is without support in case law. Stalking does not require six acts of harassment, it requires two, which is why the stalking statute says that only two such acts are required. RCW 9A.46.110(6)(e).

¶25 Here, in both of the interactions during which Haines directly threatened Bezabih, he engaged in numerous instances of escalating and profane sexual proposals, discriminatory rhetoric, physical intimidation, and, finally, threats to kill. Haines's contention that this behavior did not constitute a "series of acts," and so could not constitute a harassing "course of conduct," is without merit. As such, so is his contention that the jury was unable to conclude from the proof of two separate incidents of harassment that he was guilty of stalking.

## III

¶26 Haines next contends that the language of the stalking statute is unconstitutionally vague.[4] This contention

---

[4] Constitutional vagueness challenges present issues of law, which are "reviewed de novo." *State v. Immelt*, 150 Wn. App. 681, 686, 208 P.3d 1256 (2009) (citing *State v. Abrams*, 163 Wn.2d 277, 282, 178 P.3d 1021 (2008)). "The party challenging a statute carries the burden of proving its unconstitutionality." *State v. Halstien*, 122 Wn.2d 109, 118, 857 P.2d 270 (1993). "In a facial challenge, as

appears to stem either from Haines's incorrect reading of the statute or from foreign case law with flawed reasoning.

¶27 "The due process clause of the Fourteenth Amendment requires that citizens be afforded a fair warning of proscribed conduct. [Persons alleging that a statute is unconstitutionally vague] must prove that the [statute] either (1) fails to sufficiently define the offense so that people of 'common intelligence' can understand what conduct is proscribed or (2) fails to provide ascertainable standards of guilt to protect against arbitrary enforcement." *State v. Immelt*, 150 Wn. App. 681, 689, 208 P.3d 1256 (2009) (footnote omitted) (quoting *City of Spokane v. Douglass*, 115 Wn.2d 171, 178-79, 795 P.2d 693 (1990)).

¶28 The crux of Haines's vagueness challenge is his assertion that the use of the words "series of acts" in the statutory definition of "course of conduct" (in turn relied upon by the stalking statute's definition of "harasses") makes the stalking statute so confusing that ordinary people are unable to discern how many times they are able to harass someone before they are guilty of stalking. "[B]ut the possibility of different meanings alone does not render a statute vague." *Cascade Floral Prods., Inc. v. Dep't of Labor & Indus.*, 142 Wn. App. 613, 618-19, 177 P.3d 124 (2008). Here, Haines has formulated a highly implausible reading of the stalking statute—that it requires proof of at least six separate incidents of harassment—and now points to that formulation as evidence that ordinary people cannot determine the statute's meaning and that police and prosecutors have unfettered discretion in deciding how the statute is to be enforced. In actuality, the number of times that a person must harass another person before being guilty of stalking is clearly set forth in the stalking statute

---

here, we look to the face of the enactment to determine whether any conviction based thereon could be upheld. A statute is not facially vague if it is susceptible to a constitutional interpretation." *State v. Aver*, 109 Wn.2d 303, 307, 745 P.2d 479 (1987) (citation omitted).

itself: "repeatedly," which is statutorily defined as "on two or more separate occasions." RCW 9A.46.110(6)(e).

¶29 Haines cites to no Washington case law supporting his contention that the stalking statute is vague. Instead, he relies on two foreign cases. One decision, *Commonwealth v. Kwiatkowski*, 418 Mass. 543, 637 N.E.2d 854 (1994), examined a stalking statute similar to Washington's. The *Kwiatkowski* court adopted essentially the interpretation of that statute now advanced by Haines. But the *Kwiatkowski* court's reasoning was flawed for the same reason that Haines's is: the court failed to consider that the supposedly cumulative nature of the statute is not particularly troubling if "series of acts" is given its ordinary meaning, rather than viewed as impliedly referring to independent acts of harassment. *See Kwiatkowski*, 418 Mass. at 546-47. In any event, the decision is of little persuasive force; the prosecution in the case did not even contest the vagueness issue. *See Kwaitkowski*, 418 Mass. at 546.

¶30 Curiously, the only other case upon which Haines substantively relies with respect to this issue, *United States v. Smith*, 685 A.2d 380 (D.C. 1996), reached a conclusion precisely opposite of the one urged by Haines. The *Smith* court, again examining a stalking statute similar to Washington's, held that the "repeatedly" and "course of conduct" requirements of that statute were "not meant to modify each other and create the type of 'layering' argued by" the defendant in that case.[5] 685 A.2d at 385. Haines laudably brings *Smith* to our attention, but is unable to muster a convincing way to distinguish it, instead asserting without legal support that its holding was "contrary to the basic rules of statutory construction." Absent any convincing explanation of why this is so, however, we take *Smith* simply for what it is: yet another reason to reject Haines's meritless vagueness challenge.

---

[5] The court's analysis was amusingly summarized by one of its members: "Plural plurals are not required." *Smith*, 685 A.2d at 389 (Schwelb, J., concurring).

# IV

¶31 Haines next contends that the trial court violated the double jeopardy clauses of the state and federal constitutions[6] by sentencing him for stalking as well as for harassment.[7] According to Haines, his felony and misdemeanor harassment convictions must be vacated if his sentence for stalking is upheld. Putting aside Haines's unsupported assertion that a finding of double jeopardy would result in the vacatur of the more serious felony harassment conviction, rather than the misdemeanor stalking conviction, we conclude that Haines's underlying contention is without merit. Specifically, we conclude that Haines's double jeopardy argument is directly foreclosed by our holding in *State v. Parmelee*, 108 Wn. App. 702, 32 P.3d 1029 (2001).

¶32 In *Parmelee*, this court examined a stalking conviction based on several separate violations of no-contact and protection orders. 108 Wn. App. at 707-08. The stalking conviction was sentenced separately from the convictions for the court order violations. *Parmelee*, 108 Wn. App. at 708. On appeal, Parmelee contended that the fact that he was sentenced on the stalking conviction in addition to the court order violations violated constitutional protections against double jeopardy. *Parmelee*, 108 Wn. App. at 708.

¶33 We rejected Parmelee's argument, concluding that he was not subjected to double jeopardy by his sentences because the predicate acts supporting his stalking conviction—the court order violations—were distinct from the pattern of conduct that they together comprised. We reached this holding based on the well-established double jeopardy test announced by the United States Supreme

---

[6] "No person shall be . . . subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V; "No person shall . . . be twice put in jeopardy for the same offense." WASH. CONST. art. I, § 9.

[7] Double jeopardy claims are reviewed de novo on appeal. *State v. Freeman*, 153 Wn.2d 765, 770, 108 P.3d 753 (2005).

Court in *Blockburger v. United States*, 284 U.S. 299, 304, 52 S. Ct. 180, 76 L. Ed. 306 (1932):

> "The applicable rule is, that where *the same act or transaction* constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not."

*Parmelee*, 108 Wn. App. at 709 (quoting *Blockburger*, 284 U.S. at 304). As we explained, "Each of the three charges filed against Parmelee for violating one of the no-contact orders or the protection order was based on a different, individual letter . . . . In contrast, the stalking charge was based on allegations of repeated harassment established by the multiple letters. Thus, each 'act or transaction' in this case does not violate both statutes." *Parmelee*, 108 Wn. App. at 709.

¶34 Although this case involves stalking based on harassment, rather than on court order violations, the applicability of our decision in *Parmelee* is inescapable. The trial court did not err by sentencing Haines consistently with the law as expressed in *Parmelee*.[8] There was no double jeopardy violation.

¶35 Affirmed.

BECKER and LAU, JJ., concur.

Review denied at 167 Wn.2d 1022 (2010).

---

[8] Haines also contends that his stalking conviction violates constitutional free speech guaranties. We decline to reach this issue, however; it has been asserted solely in response to an unnecessary argument by the State, and not anything inherent in Haines's conviction. "A reviewing court should not pass on constitutional issues unless absolutely necessary to the determination of the case." *State v. Hall*, 95 Wn.2d 536, 539, 627 P.2d 101 (1981).